MATERIAL SERVICE CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Richard Kwiatkowski, Appellee).

First District (Industrial Commission Division)   No. 1—84—1246WC

Opinion filed May 8, 1985.

Robert B. Young, of Gifford, Detuno & Gifford, Ltd., of Chicago, for appellant.

Nicholas Liontakis, Ltd., of Homewood, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Richard Kwiatkowski, petitioner, filed applications for adjustment of claims under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*), contending that he sustained injuries as a result of four separate accidents occurring on April 4, 1978, December 11, 1978, August 22, 1979, and on June 4, 1980, which arose in the course of his employment with Material Service Corporation (Material Service). The four applications were consolidated for hearing before the arbitrator. With regard to the accident occurring December 11, 1978, the arbitrator awarded petitioner temporary total disability benefits for a period of 134/7 weeks. With regard to the accident occurring August 22, 1979, the arbitrator awarded Kwiatkowski temporary total disability benefits for a period of 41 weeks. Material Service petitioned the Industrial Commission for review of those awards.

On review, the Industrial Commission modified the decisions of the arbitrator, finding that as a result of the accidents occurring on December 11, 1978, and August 22, 1979, Kwiatkowski had sustained an injury to the cervical area of his spine. The Commission made a preliminary award to petitioner of temporary total disability benefits under section 19(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.19(b)) for a period of 78⁵/₇ weeks, ordered that his employer pay Kwiatkowski the sum of $12,773.26 for necessary medical expenses and remanded the claims to the arbitrator for further proceedings. Furthermore, the Commission held that Kwiatkowski had failed to prove a causal connection between the April 4, 1978, accident and his cervical injury and that Kwiatkowski had failed to prove that an accident had occurred on June 4, 1980. Only three of the five commissioners participated in the decision. One of the three, Commissioner Ralph W. Miller, Jr., filed a separate concurring opinion in which he expressed his doubt as to the sufficiency of Kwiatkowski's proof. Material Service appeals pursuant to Supreme Court Rule 22(g) (94 Ill. 2d R. 22(g)) from an order of the circuit court of Cook County confirming the Industrial Commission's decision.

On appeal Material Service urges that: (1) as a result of Commissioner Miller's separate concurring opinion, the decision of the Industrial Commission is invalid for want of a majority of the Industrial Commission; and (2) the finding of a causal relationship between the accidents and the cervical injury is manifestly against the weight of the evidence.

At the time of the hearing before the arbitrator, the petitioner was 51 years of age. He had been employed by Material Service for over 25 years as a quarry truck driver.

On April 4, 1978, the truck that petitioner was driving ran over a ditch in the road. The resulting jolt caused Kwiatkowski to bounce in his seat. The seat springs were allegedly defective and failed to cushion petitioner's fall. Petitioner reported to the employer's clinic, complaining of lower back pain. X rays were made and showed no trauma. Petitioner received medication for his pain. He lost no time from work.

On December 11, 1978, while the truck petitioner was driving was in the process of being loaded, a large boulder was dropped into the truck's bed. The resulting jolt again caused Kwiatkowski to bounce in his seat. Again, the seat springs were alleged to be defective and failed to cushion Kwiatkowski's fall. Kwiatkowski reported to the employer's clinic, complaining of pain up and down his entire back. X

rays made showed a compression fracture of the L-3 vertebra. Two weeks after the accident, Kwiatkowski complained of numbness in his left arm and hand. Medication and back support were prescribed. Petitioner was off work from December 11, 1978, until March 19, 1979.

On August 22, 1979, while the truck petitioner was driving was in the process of being loaded, part of the load shifted, causing petitioner to twist violently in his seat. He reported to the employer's clinic, complaining of lower back and neck pains. He was transferred to Our Lady of Mercy Hospital in Dyer, Indiana, and there underwent a lumbar myelogram, a lumbar articular facet nerve block and then a lumbar articular facet nerve rhizotomy. Petitioner was still taking pain medication at the time of his discharge from the hospital. Kwiatowski was off work from August 22, 1979, until June 4, 1980.

On June 4, 1980, petitioner attempted to return to work but departed, complaining of lower back and neck pain after working only five hours. He has not worked since that time.

During November 1980, at the recommendation of Dr. William Fischer, petitioner was hospitalized for further tests. Based on the results of those tests, Dr. Fischer referred Kwiatkowski to a neurosurgeon, Dr. Leonard J. Cerullo.

The hearing before the arbitrator was held on February 19, 1981, and March 31, 1981. Petitioner introduced the deposition of Dr. Cerullo. Dr. Cerullo testified that in his opinion petitioner could be suffering from a mild cervical myelopathy; that this condition could be causally related to one or both of the December 11, 1978, or August 22, 1979, accidents; that if tests showed petitioner was indeed suffering from such a condition, corrective surgery would be necessary; and, that such a condition would prevent petitioner from performing his customary duties. Dr. Cerullo testified that, based on his experience, about 10% of patients who sustain a fracture at one level of the spine will sustain another unsuspected, noncontiguous injury in another area of the spine. In particular, Dr. Cerullo noted a correlation between mid-lumbar fractures and mid-cervical fractures.

Material Service introduced the March 23, 1981, deposition of Dr. James F. Dupre, another neurosurgeon. In Dr. Dupre's opinion, based on his examination of petitioner, there was no evidence to suggest any damage to petitioner's spine. At the time this deposition was taken, Dr. Dupre had not seen the results of the tests upon which Dr. Cerullo had based his testimony.

The decisions of the arbitrator were entered May 19, 1981. Subsequent thereto, on May 22, 1981, petitioner underwent an anterior cervical fusion at the C-5 and C-6 vertebrae. The operation was per-

formed by Dr. Fischer. Material Service filed its petitions for review of the decisions of the arbitrator on June 19, 1981.

In the review proceedings before the Industrial Commission, Material Service introduced the November 25, 1981, deposition of Dr. Dupre. Since last deposed, Dr. Dupre had reviewed Dr. Cerullo's records and Dr. Fischer's report on petitioner's May 22, 1981, operation. In Dr. Dupre's opinion, petitioner's cervical condition was not an uncommon condition for a man his age and had resulted from a gradual progressive degeneration. Based on this and the paucity of petitioner's complaints about neck pain following each accident, Dr. Dupre was of the opinion that the condition was not causally related to those accidents. Dr. Dupre also did not believe that petitioner's condition required surgery.

Kwiatkowski introduced the deposition of Dr. Fischer. Dr. Fischer testified that any of the first three accidents could have resulted in petitioner's cervical condition; that symptoms thereof might not manifest themselves immediately; that Kwiatkowski complained of neck pain earlier than the doctor had previously reported; and that petitioner was unable to perform his customary duties.

Kwiatowski testified before the Industrial Commission. His testimony related principally to events occurring after the hearing before the arbitrator up to December 8, 1981, the date of the hearing before the Industrial Commission. He testified that prior to the cervical fusion he had experienced severe neck pain.

Because Dr. Fischer's testimony indicated complaints of neck pain not previously reported, the Industrial Commission granted the employer a continuance in order to allow the employer to have Dr. Dupre assess the significance thereof. When the proceedings resumed on February 2, 1982, the employer introduced the December 16, 1981, deposition of Dr. Dupre. In essence, the presence of the additional complaints did not change the doctor's opinion that there was no causal relation between petitioner's conditions and the various accidents.

The Industrial Commission entered its decision on June 2, 1983, in which it modified the decisions of the arbitrator. The Commission found that as a result of the accidents occurring on December 11, 1978, and August 22, 1979, petitioner had sustained an injury to the cervical area of his spine; and it made a preliminary award to petitioner of temporary total disability benefits under section 19(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.19(b)) for a period of 78$^{5/7}$ weeks from June 4, 1980, to December 8, 1981, the date of the hearing before the Commission. The Commis-

sion also ordered that Material Service pay petitioner the sum of $12,773.26 for necessary medical expenses and remanded the cause to the arbitrator for further proceedings. The Commission held that petitioner had failed to prove a causal connection between the April 4, 1978, accident and his cervical injury and also held that petitioner had failed to prove that an accident occurred on June 4, 1980.

Only Commissioner Calvin Tansor and Commissioner Ted Black, Jr., signed the decision. Commissioner Ralph W. Miller, Jr., filed the following specially concurring opinion:

"I would have found that [Kwiatowski] failed to prove any causal relationship between any of the accidents alleged and his cervical condition and therefore would have denied his claim for any related disability and medical expense, base [sic] on the time elements, the unclear history of complaints, and the same basic facts set forth by the majority[.] I am signing as concurring with the non-precedential 2-member 'majority' decision, however, based only on 1) indications of the probability that the same result would be reached were the case to be referred for additional consideration of the record, with or without new oral arguments, and 2) in order that a decision may now issue."

A concurrence of a majority of the members of the Industrial Commission, in this case three of the then five members, is necessary before the Industrial Commission may be said to have agreed upon a decision on the issues presented. (Ill. Rev. Stat. 1981, ch. 48, par. 138.19(f)(2).) Material Service points to the language of Commissioner Miller's concurring opinion and urges that his vote should be characterized as a dissent. Therefore, Material Service concludes, a majority decision was not reached in this case. Petitioner maintains that Commissioner Miller's concurring opinion resulted in a conclusive determination of the controversy and that it was intended simply to deny the written decision of the Commission any precedential value. Petitioner points out that, notwithstanding the language of the concurring opinion, Commissioner Miller voted to accept the decision of the two other commissioners and to modify the arbitrator's award.

■ Thus, we are presented with the question of which pronouncement controls where there is a variance between a judgment or decision and the written opinion upon which that judgment or decision rests. We are of the opinion that the judgment, and not the written opinion, controls. A judgment may be sustained upon any ground warranted by the record regardless of whether the particular reasons given therefor in the written opinion are correct. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457

N.E.2d 9, 12.) In the case at bar, notwithstanding the language of his specially concurring opinion, Commissioner Miller joined the two other commissioners and decided to specifically modify the award of the arbitrator herein. Thus, a majority of the Commission expressly decided to modify the award of the arbitrator, and such pronouncement represents the decision of the Industrial Commission. That decision will not be set aside unless it is contrary to the manifest weight of the evidence. *Benson v. Industrial Com.* (1982), 91 Ill. 2d 445, 440 N.E.2d 90.

■ Material. Service further urges that the finding of causal relationship between the various accidents and Kwiatkowski's cervical injury is manifestly against the weight of the evidence. It contends that the Commission should have adopted the views of its medical expert rather than those of petitioner's medical experts. The expert testifying on behalf of Material Service was of the opinion that, based mainly on the absence of complaints, there was no causal connection between petitioner's condition and the various accidents.

It is within the province of the Industrial Commission to resolve conflicts in the evidence and to draw reasonable conclusions and inferences from the evidence, and those findings may not be set aside unless they are manifestly against the weight of the evidence. (*McLean Trucking Co. v. Industrial Com.* (1983), 96 Ill. 2d 213, 219, 449 N.E.2d 832, 835.) There is medical testimony in the record which, although contradicted by his employer's expert medical testimony, indicates the existence of a causal relationship between the various accidents and Kwiatkowski's condition. As such, the Industrial Commission's finding is not contrary to the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WEBBER, P.J., and BARRY, LINDBERG, and SULLIVAN, JJ., concur.