(Nos. 15758-15759.—Judgments affirmed.)

THE PEABODY COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ANNA BLACKBURN, Defendant in Error.)—THE PEABODY COAL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(LENA STAUDER, Defendant in Error.)

*Opinion filed February 19, 1924—Rehearing denied April 3, 1924.*

1. WORKMEN'S COMPENSATION—*when finding of the Industrial Commission will not be set aside.* Where the facts are controverted and their determination depends upon credit to be given contradictory testimony, the courts will give due weight to the findings of fact made by the Industrial Commission, and they will not be set aside unless manifestly against the weight of the evidence.

2. SAME—*what is the test of partial dependency.* The test of partial dependency is whether the contributions were relied upon by the dependent as a means of living, judged by the dependent's position in life, and whether the dependent was to a substantial degree supported by the employee at the time of his death; and it is not necessary to show that the dependent would have been without the necessities of life or was without other means of support.

WRITS OF ERROR to the Circuit Court of Williamson county; the Hon. D. T. HARTWELL, Judge, presiding.

E. P. TROBERT, and E. M. SPILLER, for plaintiff in error.

A. W. KERR, and GEORGE R. STONE, for defendants in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Clarence Blackburn and Norman Stauder, miners employed by the Peabody Coal Company, were killed January 14, 1921, by a fall of coal. The two cases were consolidated for hearing and an award made in each case. These awards were confirmed by the circuit court of Williamson county and a petition filed asking this court to allow the prosecution of a writ of error. The reply to this petition

permitted by rule 43 of this court was not filed, and the petition was allowed.

Oscar Howard testified that during January, 1921, he was employed by plaintiff in error as assistant mine manager; that Blackburn and Stauder were loaders working under his supervision; that they were working rooms 4 and 5 off a stub-entry; that on the night of January 12 the mine examiner marked room 4 unsafe; that a block of wood was laid across the track at the entrance of the room and two crosses were made thereon with chalk; that a practical miner understood this sign to indicate that the room was unsafe and that he was not to work in it; that he went into the room the following morning with Blackburn and Stauder and found the roof loose and unsafe; that he directed props to be placed so that the roof was supported; that he then removed the marked obstacle placed across the track by the examiner; that he assigned Blackburn and Stauder another room, which in one part of his testimony he said was room 4 off the north entry and about eight rooms from the one marked out, and which in another part of his testimony he said was room 3 off the fifth south entry, this not being the same entry as the one where the accident occurred; that he found Blackburn and Stauder working in room 4 off the stub-entry on the morning of January 14; that he took a pick and examined the roof and found it so loose that it was dangerous to work under; that he waited until the car which was being loaded was full and pulled out of the room; that he took the loaders into room 5 and directed them to work there; that he left them in room 5 about ten o'clock; that about one o'clock he returned to the stub-entry and found the two loaders buried under a fall of coal in room 4; that the room in which he found their bodies was the room which he had ordered closed and directed them not to enter.

Vester Dalton testified that he was employed in January, 1921, as a driver in the mine in question; that he was

delivering empty cars to and taking full cars from Blackburn and Stauder; that they were working in rooms 3 and 4 off a stub-entry off the fifth south entry; that he had been pulling cars for them in and out of these rooms for two weeks; that he pulled two cars out of room 4 early in the morning of January 14 and that he pulled four full cars out of room 3; that he returned to room 3 shortly after twelve o'clock and found that the men had been killed in that room by a fall of coal; that room 5 off this stub-entry was not being worked that day; that on January 13 shots were placed in the room where the men were killed and that night the shots were fired; that the coal being loaded in the room by the men was coal that had been shot down.

Plaintiff in error argues that these miners went into an unsafe room that had been closed and that by this act they took themselves out of the sphere of their employment. Defendants in error contend that no room was marked out as required by the Mining law, and further, that these miners were killed in room 3, which was one of the rooms to which they had been assigned. The testimony of Howard and Dalton is in direct conflict in several respects. Plaintiff in error seeks to explain this conflict by saying that Dalton is mistaken in his identification of the rooms. The record is unsatisfactory on this point, and it is apparent that it could have been made clear by the use of a simple diagram and the direction of the attention of the witnesses to this diagram while they were testifying. Notwithstanding the possibility of an error in the use of the numbers identifying the rooms, the room in which the loaders were killed is identified by the loads they took out and the time they were taken out. Howard testified that before ten o'clock two loads were taken out of the room marked unsafe and that the miners were assigned to an adjoining room. Dalton testified that two cars were taken out of room 4 early in the morning and that four cars were pulled out of an adjoining room just before noon, and that the

men were found dead in the room from which he pulled the last four cars. If this testimony be true, then the men were killed not in the room from which they were ordered earlier in the morning but in the other room assigned to them. The commission saw and heard Howard testify and its finding is against his testimony. We do not have the advantage of seeing the witnesses. Where the facts are controverted and the determination of a disputed question of fact depends upon credit to be given contradictory testimony, the courts will give due weight to the finding of the commission, which is qualified by experience and special study to weigh facts applicable to cases within its jurisdiction. (*Inland Rubber Co.* v. *Industrial Com.* 309 Ill. 43; *Keller* v. *Industrial Com.* 302 id. 610.) The findings of fact made by the commission will not be set aside unless manifestly against the weight of the evidence. *Imperial Brass Manf. Co.* v. *Industrial Com.* 306 Ill. 11; *Field & Co.* v. *Industrial Com.* 305 id. 134.

Blackburn was a married man and the award in his case was made to his widow. Stauder was a single man, twenty years of age at the time he was killed, and the minimum award of $1650 was made to his mother. She testified that her husband was living with her and that prior to Norman's death she had three sons and a daughter living at home; that her three sons were employed and all contributed to the family fund; that Norman gave to her each pay-day a sum varying according to the amount of pay he received; that these sums ranged from $50 to $125 a month; that his contributions to the family fund exceeded those made by his father during the year preceding his death. This testimony, which stands undisputed in the record, fully supports the award. Partial dependency may exist even though the evidence shows the claimant could have subsisted without the contributions of the deceased employee. It is not necessary to show that the claimant would have been without the necessities of life, nor is it necessary

to show that the dependent was without other means of support. The test is whether the contributions were relied upon by the dependent for her means of living, judging this by·her position in life, and whether she was to a substantial degree supported by the employee at the time of his death. *Pratt Co.* v. *Industrial Com.* 293 Ill. 367; *Keller* v. *Industrial Com.* 291 id. 314.

The judgments of the circuit court confirming these awards are affirmed.

*Judgments affirmed.*