(No. 56060.—)

INTERNATIONAL HARVESTER, Appellee, v. THE IN-DUSTRIAL COMMISSION *et al.* (Curtis Ladewig, Appellant).

*Opinion filed November 18, 1982.*

James Serkland, of Scheele, Serkland & Boyle, Ltd., of Chicago, for appellant.

Braun, Lynch, Smith & Strobel, Ltd., of Chicago (Mark A. Braun, of counsel), for appellee.

CHIEF JUSTICE RYAN delivered the opinion of the court:

An arbitrator for the Industrial Commission awarded the claimant, Curtis Ladewig, medical benefits, a sum for temporary total incapacity, and 40% permanent disability under the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*). The Industrial Commission affirmed the award. On *certiorari* the circuit court of Lake County reversed the decision of the Industrial Commission. The court found that the claimant had failed to carry his burden of proving that his condition was causally related to an accidental injury. The court order stated, "At best, petitioner established an equal probability, both that it was related and that it was not related." Claimant

appealed to this court under Rule 302(a). 73 Ill. 2d R. 302(a).

Before the arbitrator, Dr. David Heinrich, an internal medicine specialist, testified that he had been the treating physician of the claimant for about nine years preceding an accidental injury which occurred on December 20, 1978. He first treated the claimant in 1970 for bronchial pneumonia, and the following year he removed a cervical disc. In 1972, Dr. Heinrich performed additional surgery to repair massive adhesions in the stomach area, which had developed as a result of surgery that had been performed by another surgeon prior to the time Dr. Heinrich treated claimant for bronchial pneumonia. Following this repair surgery, another physician discovered claimant had developed an incisional hernia. Following surgery for this condition, a company physician placed claimant on a work restriction which prevented him from lifting more than 20 pounds.

Claimant was intermittently treated by Dr. Heinrich during 1973 and 1974, but was not again treated by him until 1977. At that time, he performed gall bladder surgery in the same general area as the three operations which had been previously performed on the claimant. Near the end of 1977, it was discovered that an additional incisional hernia had developed between the place of the prior surgery and the 1977 gall bladder surgery.

Because of this latest problem, in June 1978, further surgical procedures were performed by yet another physician, Dr. H. James Solomon, to repair the incisional hernia. This was done by adding extra layers of reinforcing sutures. Although Dr. Heinrich allowed the claimant to return to work in August 1978, he placed the claimant under a 24-pound weight-lifting restriction which remained in effect until the incident at issue occurred. After returning to work, the claimant continued to experience epigastric distress and regurgitation which resulted in signifi-

cant stress in the abdominal area. While the wound healed slowly over the next several months, Dr. Heinrich noted in his record of an office visit by the claimant in late November 1978 that the incision was healing well and was almost solid.

On December 20, 1978, the claimant unwittingly violated the weight restriction by lifting a 30-pound panel. Although he previously had been working without apparent difficulty, he immediately experienced pain, burning, and an upper abdominal bulge. After consulting with the company medical department the same day, the claimant was told by Dr. Maniquis, a company physician, that he had a hernia. Dr. Maniquis, however, allowed him to return to work for the next two days until the plant closed for Christmas vacation. He did tell the claimant to avoid excessive activity. When the plant reopened after the Christmas holidays, Dr. Witkowski, another company physician, also told the claimant he had a hernia, and placed him under work restrictions which prevented him from lifting more than 15 pounds. As no work was available within these limitations, he was sent home.

In early January 1979, Dr. Heinrich again examined the claimant. He concurred in the diagnosis of Dr. Witkowski that the claimant had sustained a hernia and should not engage in any further lifting, pushing, or pulling. Dr. Heinrich, moreover, told the claimant he could not be treated further by surgery, since the hernia was located in the same area in which earlier gall bladder and incisional repair surgery had been performed. Each previous operation had diminished the chances of successfully repairing the hernia.

While testifying before the arbitrator, Dr. Heinrich said that he continued to believe the claimant should presently avoid any further lifting, pushing, or pulling. The arbitrator found that the claimant could pursue only light work without suffering adverse consequences; that the

employer had offered claimant such a job and that the claimant did not return to work but moved to Wisconsin.

With regard to the causal connection between the lifting and the accidental injury, Dr. Heinrich testified "that it might have well been connected." On the other hand, Dr. Heinrich also testified that the claimant frequently complained about experiencing stomach pain following his meals throughout his entire period of treatment. He complained, moreover, about frequent vomiting, which caused substantial pressure on his abdomen. Dr. Heinrich testified that when he had completed the surgical repair of the claimant's hernia in June 1978, he noted the stitches were weak and might not hold. Because the claimant had prior stomach problems, Dr. Heinrich also thought that the probability of recurring problems in this area was substantially increased. As late as November 1978 the claimant had experienced soreness at the incisional site. Repetitive surgery had lessened the blood supply to the fascia, and an infection following the gall bladder surgery had further weakened the incisional area. These factors enhanced the chances that a hernia would develop. Consequently, Dr. Heinrich testified that it was possible that epigastric distress could also have caused the instant hernia. Because Dr. Heinrich had testified as to these two possible causes, as noted above, the circuit court later found that the claimant had failed to sustain his burden of proof and had only established that two causes were equally probable. The arbitrator, however, had found that the claimant sustained an accidental injury arising out of and in the course of his employment. The Industrial Commission affirmed the decision of the arbitrator.

This court has held that medical evidence is not an essential ingredient to support the conclusion of the Industrial Commission that an industrial accident caused the disability. A chain of events which demonstrates a previous condition of good health, an accident, and a subse-

quent injury resulting in disability may be sufficient circumstantial evidence to prove a causal nexus between the accident and the employee's injury. (*Martin Young Enterprises, Inc. v. Industrial Com.* (1972), 51 Ill. 2d 149, 155.) In *Union Starch & Refining Co. v. Industrial Com.* (1967), 37 Ill. 2d 139, 144, this court said, "We know of no case requiring a doctor's testimony to establish causation and the extent of disability, especially where, as here, the record contains the company doctor's report and hospital records showing findings of the employee's personal physician which are consistent with the employee's testimony." When the claimant's version of the accident is uncontradicted and his testimony unimpeached, his recital of the facts surrounding the accident may be sufficient to sustain an award. *Thrall Car Manufacturing Co. v. Industrial Com.* (1976), 64 Ill. 2d 459, 463.

In this case, immediately before the lifting which claimant contends caused his injury, he was not experiencing acute pain, nor was there a swelling or bulging indicating a hernial condition. After the lifting incident, the claimant immediately began to suffer pain and burning, and the bulging was noticed. Further, there is no evidence that the vomiting and epigastric distress, which were sometimes suffered by the claimant, occurred within a medically significant period prior to the accident. This chain of events, even without the introduction of any medical testimony, strongly suggests that the claimant's injury was caused by the lifting incident.

This court, moreover, has held that when the Industrial Commission is faced with the question of which of two conflicting views of medical testimony should be adopted, it is for the Commission to ascertain the testimony which is to be accepted. (*McIntire v. Industrial Com.* (1971), 49 Ill. 2d 239, 242.) It is within the prerogative of the Commission to decide disputed issues of fact involving diverse medical opinions, including those of causal connection.

(*Proctor Community Hospital v. Industrial Com.* (1969), 41 Ill. 2d 537, 541.) On review, this court will not reject reasonable inferences of the Commission merely because it might have drawn a contrary inference on the particular facts. *Owens-Illinois Glass Co. v. Industrial Com.* (1968), 39 Ill. 2d 312, 316; *Shell Oil Co. v. Industrial Com.* (1967), 38 Ill. 2d 286, 288; *Farace v. Industrial Com.* (1966), 34 Ill. 2d 80, 84.

It is true that Dr. Heinrich testified that two distinct factors could have caused the injury. However, his testimony that the lifting and the injury "might have well been connected" is supported by the evidence concerning the chain of events and the statement by the company doctor that claimant had a hernia when he reported to the company medical department after the accident. The other opinion voiced by Dr. Heinrich finds no support in the chain of events. The Industrial Commission was therefore justified in rejecting this second opinion, and its finding that the accident and claimant's injury are causally connected is not against the manifest weight of the evidence. As noted above, there was no evidence of any epigastric distress significantly close to the appearance of the hernia. The statement was simply that such distress could cause a hernia in a person whose physical structure was impaired to the extent to which the claimant's was impaired.

The judgment of the circuit court of Lake County is reversed, and the award of the Industrial Commission is reinstated.

*Judgment reversed;*
*award reinstated.*