JOHN F. DUNKER, Appellant, *v.* THE INDUSTRIAL COMMISSION *et al.* (D & B Contractors, Inc., Appellee).

First District (Industrial Commission Division)   No. 1—84—0378WC

Opinion filed July 11, 1984.

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Charles E. Anesi and Arnold G. Rubin, of counsel), for appellant.

Cohn, Lambert, Ryan & Schneider, Ltd., of Chicago (Pamela Karoff Kesler, of counsel), for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Petitioner, John F. Dunker, filed three applications for adjustment of claims under the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*). These applications involved three injuries alleged to have occurred February 23, 1977 (79WC32970), November 3, 1977 (79WC32971), and May 23, 1978 (79WC32972), while petitioner was employed by D & B Contractors, respondent.

At the outset we observe that it is not disputed that at all pertinent times Dunker was the sole owner of and was employed by D & B Contractors.

An arbitrator awarded petitioner benefits on each of the claims, and in a single decision the Industrial Commission reversed each of the awards. On *certiorari*, the circuit court of Cook County confirmed the decision of the Commission without opinion, and Dunker has perfected two appeals in which he contends that the Commission erred in rejecting his account of the incidents resulting in his injuries. Petitioner's appeals have been consolidated by this court.

At a hearing held on May 21, 1980, Dunker testified before the arbitrator that on February 23, 1977, he was shoring a block retaining wall with railroad ties when the wall collapsed. The wall was six feet high and was 10 to 20 feet long. Dunker stated that his right leg twisted and locked and that he crawled out unassisted. He related that he may have been working alone at that location. Later, the leg swelled. Dunker testified that he tried to rebuild the wall the next day but could not. According to Dunker, the locking and discomfort continued for four to six weeks. Dunker visited the Lundholm Surgical Group regarding the locking and lack of strength in the right leg. Dr. Donald W. Lyddon performed surgery on the right knee in April and again in May 1977. The first surgery was within five days of Dunker's first visit to Dr. Lyddon.

In a report by Dr. Lyddon dictated June 23, 1977, Dr. Lyddon stated that Dunker had told him the injury occurred three months before. In an October 25, 1979, report, Dr. Eugene Leonard indicated that Dunker had told him that a wall had fallen over, knocking him down; that there was no real problem, and Dunker continued working; and that about a month later, Dunker noticed loss of full motion in extension of the knee.

David Raht testified that he was employed by LFAC Insurance Agency in 1977. Raht related that in late April 1977 he noticed Dunker limping and asked what had happened to his knee and that Dunker replied that he had injured it but did not know how. The re-

cord indicates that on the date of Raht's conversation with Dunker, Dunker was the owner of LFAC Insurance.

At the October 15, 1980, hearing before the same arbitrator, Dunker was the sole witness. Testifying in support of his second and third claims, Dunker stated that on November 3, 1977, he was working alone and was using a cement saw to cut an opening in a 24-inch-thick concrete or masonry firewall for installation of a door when the wall fell over on him, knocking him down and twisting his left leg. Dunker stated that he went home then but worked the next day. According to Dunker, the left leg was snapping, cramping, locking, and collapsing. He related that several days later he consulted Dr. Lyddon. Dunker further testified that on May 23, 1978, he was backfilling, using a Caterpillar, when it tipped and threw him off against a wall and under the Caterpillar. Dunker related that he had difficulty rising and that his left leg ached, was unstable, and locked and cramped. When home heat treatments failed, Dunker consulted Dr. Lyddon, who performed surgery in June 1978. On cross-examination, Dunker testified that the whole wall had not fallen on him in the November 3, 1977, incident but only the door area, approximately 42 by 80 inches, which had fallen in several pieces.

Among several medical reports introduced into evidence as exhibits for respondent was an April 17, 1978, discharge summary in which Dr. Lyddon stated that Dunker "has been noticing frequent locking of the left knee over the past 6 to 8 months" but that he "recalls no specific injury."

Hearings were held before the Commission on December 18, 1980, April 23, 1981, and May 21, 1981. The first hearing concerned the claim relating to Dunker's right leg (79WC32970); the second was a combined hearing on the two claims concerning Dunker's left leg (79WC32971 and 79WC32972); and the third was a continuation of the second. At the third hearing, respondent offered into evidence a copy of a "Judgment and Probation/Conviction Order," dated February 17, 1981, which recited that Dunker had been found guilty of knowingly, willingly and unlawfully using the United States Postal Service to fraudulently receive a United States Treasury check and of making a false statement to the Small Business Administration. This exhibit indicated that Dunker was sentenced to two years' probation.

In its opinion dated July 20, 1982, the Commission found Dunker's testimony concerning each of the three incidents to be "contradictory, uncorroborated, and unbelievable." As to the February 23, 1977, incident, the Commission found incredible Dunker's testimony

that he was working alone shoring a wall with objects the size and weight of chemically treated railroad ties and that he extricated himself unassisted from under the fallen block wall he had described. The Commission also expressly considered that Dunker was the sole witness, that he sought no medical help for over a month, and that Dunker had told LFAC Insurance Agency's employee, David Raht, that he did not know how he had injured his knee. As to the November 3, 1977, incident, the Commission found it unlikely that a door cut-out in a cement wall 24 inches thick would fall out in pieces or that it would fall without being knocked out and that, if it did so, it would be unlikely that Dunker would wait four months before seeking treatment. The Commission noted that, while Dunker stated that he sought treatment several days later, Dr. Lyddon's records established that Dunker consulted him four months after the alleged incident and gave only a general history of locking of the left knee, which Dunker could not relate to any particular incident. The Commission also noted the absence of any corroborative evidence as to the November 3, 1977, incident. As to the May 23, 1978, incident, the Commission observed that, while Dunker testified that he sought treatment almost immediately or within a matter of days, Dr. Lyddon's records indicated that it was three weeks before Dunker sought treatment and that while Dunker testified that he was thrown against a wall and under the Caterpillar, he told Dr. Lyddon that he hit his knee when a wall fell on him and the Caterpillar. The Commission also noted that Dunker's account of the May 23, 1978, incident was uncorroborated and that there were no other witnesses.

██ ■ Petitioner sets forth numerous challenges to the Commission's conclusion that his testimony was not credible. We find each of them to be without merit. First and foremost, petitioner incorrectly asserts that the implicit findings of the arbitrator as to petitioner's credibility somehow bound the Commission, which did not hear that testimony. It is well established in Illinois that it is the peculiar province of the Industrial Commission to determine the credibility of witnesses, to weigh the testimony, and to determine the weight to be given to the evidence. Regardless of whether or not the Commission hears testimony in addition to that heard by the arbitrator, it exercises original jurisdiction and is in no way bound by the arbitrator's findings. *Berry v. Industrial Com.* (1984), 99 Ill. 2d 401, 405, 459 N.E.2d 963, 965.

Furthermore, petitioner's present attacks on the findings of the Commission have little if any support from the record. Petitioner

urges that with respect to the February 25, 1977, incident, only the shoring of the wall fell on him, not the entire wall as the Commission erroneously concluded; however, the transcript reveals petitioner's testimony to be that "the retaining wall collapsed upon me." Additionally, we cannot say that the Commission erred in considering Mr. Raht's testimony or the obvious difficulties that one man would encounter in positioning railroad ties. These are matters which tended to cast doubt on petitioner's account of the events of that date. While the Commission made no reference to a medical report ascribed to Dr. Nyquist reciting a March 8, 1977, treatment of petitioner, such report suggests no etiology or time frame for the injury being treated and thus lends scant support for petitioner's argument as to the credibility of his testimony.

Regarding the November 3, 1977, incident, petitioner now asserts that the Commission failed to understand that he was injured by a falling steel door. This accords with neither of petitioner's two earlier versions of that incident, in which petitioner first stated that the wall fell and later that only pieces of the door area of the wall fell upon him. Petitioner also cites as error the Commission's conclusion that Dr. Lyddon's records showed that petitioner could recall no clear injury with respect to the knee problems later ascribed to the November 3, 1977, incident. Petitioner overlooks the report dictated April 17, 1978, in which Dr. Lyddon stated that petitioner had experienced frequent locking of the left knee over the last six to eight months but "recalls no specific injury." The time frame indicated in said report also suggests that petitioner was suffering the symptoms complained of prior to November 3, 1977. As to the May 23, 1978, incident, Dr. Lyddon indicated in a May 31, 1978, record notation that petitioner claimed to have hit a wall with a Caterpillar three weeks previously, this differing with petitioner's testimony as to when and how he was injured.

In summary, the Commission obviously concluded that petitioner had not proved his claims "by a preponderance of credible evidence." (*Republic Steel Corp. v. Industrial Com.* (1980), 82 Ill. 2d 76, 85, 411 N.E.2d 233, 237.) We conclude that the Commission's decision was not against the manifest weight of the evidence.

Petitioner further asserts that the Commission erred in considering his fraud conviction with respect to all three of his claims, despite the fact that it was introduced only at the last hearing before the Commission. Petitioner concludes that the conviction was so considered by reason of the fact that the Commission issued a single decision with respect to all three claims. Based upon the same de-

duction, petitioner assigns as error the Commission's consolidation, *sua sponte*, of his three claims for decision.

■ The Commission is always entitled to consider evidence introduced and presented to it bearing on the credibility of a claimant, and it is not necessary that such evidence has been considered by the arbitrator. (See *Luby v. Industrial Com.* (1980), 82 Ill. 2d 353, 362, 412 N.E.2d 439, 443.) Petitioner does not contend that his fraud conviction is inadmissible in his workers' compensation case, as it might be either a criminal case (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695) or a civil proceeding (*Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 363 N.E.2d 805). Rather, petitioner implies that the conviction either was irrelevant to issues regarding his credibility as a witness with respect to his first claim or else was not timely introduced with respect to that claim. Obviously, such evidence was relevant to petitioner's credibility generally and would not be limited to any specific aspect of the proceedings spanned by the record. Also, the Commission was not required to consider each claim by petitioner in isolation without reference to the remainder of its files, particularly where, as here, the Commission appears to have concluded that a pattern of deceit was present with respect to all three claims. Finally, we note that the Commission made no reference to the conviction itself in its decision. That decision is amply supported by the evidence recited therein without reference to the fraud conviction. Furthermore, we reject the notion that the Commission's consolidation of the claims was indicative of a motive on the part of the Commission to shield an improper consideration of the conviction.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SEIDENFELD, P.J., and BARRY, McNAMARA, and WEBBER, JJ., concur.