OVAL MARIE LEMONS, Appellant, v. THE INDUSTRIAL COMMISSION
*et al.*, (Buehler Christian Memorial Home, Appellee).

Third District   No. 3—86—0563WC

Opinion filed April 28, 1987.

Oval Marie Lemons, of East Peoria, for appellant, *pro se.*

McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner Oval Marie Lemons filed a claim seeking compensation for a back injury allegedly sustained while working for respondent Buehler Christian Memorial Home. An arbitrator awarded benefits. On review, the Industrial Commission reversed, finding that petitioner had failed to prove a causal connection between her condition in 1982 and a work-related accident in 1981. The circuit court of Peoria County confirmed the Commission's decision, and petitioner appeals.

At the hearing before the arbitrator, petitioner testified that on July 20, 1981, she fell and injured her back while working as a house cleaner for respondent. She reported the accident to her supervisor, and the parties agree that notice is not an issue. For several days, petitioner did nothing to treat herself. On July 25, she went to a hospital emergency room where the record shows that petitioner complained of a pain to her tailbone area radiating up her back which was the result of a fall at work. The diagnosis was a contusion of the coccyx. Aspirin and heat were recommended. Petitioner saw Dr. Huber on July 29. X rays revealed a normal sacrum and coccyx. Petitioner testified that she continued to see Dr. Huber regularly during 1981 for other problems, and frequently complained of back pain. Dr. Huber's records indicate that he saw petitioner several times in 1981, but include no mention of complaints of back pain. Petitioner testified that, although Dr. Huber took notes of her other complaints, he either took no notes or completely ignored her complaints about back pain made during two visits in September, one visit in October, and one visit in November 1981.

Petitioner testified further that she continued working for the next seven months after the accident, and her condition gradually worsened. Her duties included scrubbing floors, climbing stairs, and lifting buckets of water. Several times she mentioned the ongoing back problems to Bernard Carroll, her supervisor. She missed no work from the day of the accident until February 23, 1982, when she experienced flu symptoms.

On February 24, 1982, petitioner called work and reported a stiff back, and stated that it probably was the result of the fall at work. On March 2, Dr. Huber noted in his records that he saw petitioner, who complained of a low back pain which she had been experiencing intermittently since falling at work seven months earlier. Petitioner reported to Dr. Huber that on February 24, 1982 she had a "sudden onset of low back pain." An examination revealed muscle spasms and tender points. He diagnosed lumbosacral strain with paraspinal mus-

cle spasm and with possible nerve root injury or inflammation. In reviewing the X rays taken on July 29, 1981, Dr. Huber expressed his "doubt that there is any severe pathology since the X-ray *** showed slight right scoliosis and a moderately narrowed disc with sclerosis of the opposing surfaces. *** [This] indicates that there is probably a chronic problem."

On March 11, 1982, petitioner saw Dr. Nair. He wrote Dr. Huber stating that petitioner described the pain as shooting and constant and that it "started on February 24, 1982." The pain occurred intermittently over the next four days. "From that time on, she has been experiencing" pain in the lower back. "There is no known precipitating or relieving factors now." Dr. Nair noted, however, that petitioner had fallen at work in July 1981. "She was sore for a few days and had some pain which did go away. Apparently, the pain she described in July 1981, and February 1982, are two different types of pain." Petitioner testified that she might have told Dr. Nair that her lower back pain started on February 24, 1982, returned four days later and had remained since that day. She denied telling him that the pain in July 1981 differed from the pain in February 1982. Petitioner testified that she tried to tell Dr. Nair about the pain she experienced in 1981 and 1982, but he replied, "Be quiet, I don't want to hear nothing about that."

After hospitalizing petitioner for tests in March 1982, Dr. Nair wrote that the "only precipitating reason for the pain was a fall in July of 1981 when she was cleaning a floor." A myelogram performed on March 30, 1982 was normal. Dr. Nair concluded: "The reason for her low backache is still not clear. It could be from muscle spasm or lumbosacral strain or ligament strain."

Petitioner testified further that she began seeing Dr. John Garrison, a chiropractor, on April 7, 1982. He released her to return to work on August 6, 1982. On October 22, 1982, she was backing her car out of the driveway when she turned her head, felt pain and a pop in her lower back. She has not returned to work since that day.

Dr. Garrison testified at an evidence deposition that petitioner telephoned him in March 1982, complaining of back pain. She did not come in for treatment until one month later. She reported falling at work on July 20, 1981. X rays revealed loss of curve in her cervical spine; posteriority in the 4th and 5th cervicals and posteriority in her 5th lumbar; misalignment of her 3rd, 4th and 5th cervical, 1st thoracic, 3rd and 5th lumbar and an anterior/superior internally rotated right ilium. On August 6, 1982, he released her for work and she reported feeling well. On October 22, 1982, she "reaggravated" her low

back and stopped working. Dr. Garrison initially diagnosed a cervical sprain.

Dr. Garrison opined that petitioner's present condition was a result of the July 20, 1981, accident. He based his opinion on the history petitioner gave him, his examination, and X ray findings. Dr. Garrison believed the October 1982 incident was a reinjury as a result of the weakened condition of her spine and because she had not received proper care after the first accident.

On cross-examination, Dr. Garrison testified that the lack of spine curvature could be a degenerative change rather than the result of trauma. In regard to the scoliosis, Dr. Garrison stated that it was either progression or trauma. "It could be a condition that she's had all her life." Dr. Garrison had not seen the X rays which were taken shortly after the 1981 accident. He believed that the doctors who treated petitioner after the accident thought she was malingering. Her present condition was not caused by an accident subsequent to the July 1981 incident. Although any slip or fall could cause the injury, Dr. Garrison did not believe it would have caused the "kind of damage" petitioner suffered.

Bernard Carroll testified for respondent that petitioner made no complaint of pain to him between July 1981 and February 1982. In February 1982 she complained of back pain and he recommended that petitioner see her doctor.

An arbitrator found petitioner had experienced back pain ever since her injury of July 20, 1981. The arbitrator relied on Dr. Garrison's testimony that a causal connection existed between the back injury and petitioner's present condition. The arbitrator awarded 73⁶/₇ weeks of temporary total disability and permanent partial disability to the extent of 15%, plus medical expenses. On review, the Commission found petitioner had failed to prove a causal connection between the accident of July 20, 1981, and the injury complained of and failed to prove she was entitled to benefits as a result of that action. Although the circuit court did not agree with the Commission's decision, the court found that it was not against the manifest weight of the evidence and confirmed the decision.

■ Petitioner contends that she proved a causal connection between the July 1981 accident and her present condition. It is within the province of the Commission to determine whether a causal relationship exists between the petitioner's back problems and the accident. (*Swindle v. Industrial Com.* (1984), 126 Ill. App. 3d 793, 467 N.E.2d 1074.) In making that determination, it is for the Commission to judge the credibility of the witnesses, resolve conflicting medical

testimony, and draw reasonable inferences from the evidence. (*Steiner v. Industrial Com.* (1984), 101 Ill. 2d 257, 461 N.E.2d 1363.) A reviewing court will not overturn the Commission's decision unless it is against the manifest weight of the evidence. *Material Service Corp. v. Industrial Com.* (1985), 133 Ill. App. 3d 907, 478 N.E.2d 1095.

■ We disagree with petitioner's contention that no disputed questions of fact exist as to causal connection and that no medical evidence was presented to refute Dr. Garrison's opinion. The Commission could properly rely on the hospital records, Dr. Huber's medical chart, and Dr. Nair's reports in finding no causal connection.

After the July 20, 1981, accident, the diagnosis of petitioner made in the emergency room was a contusion of the coccyx, and aspirin and heat were recommended. She continued working until February 1982. Her job required her to lift, carry, and bend over frequently. Dr. Huber's records revealed that he saw petitioner several times in 1981, but recorded no complaints of back pain until March 1982. After reviewing the X rays taken a few days after the accident, Dr. Huber concluded that no serious pathology existed and that the X rays merely showed a chronic problem due to slight scoliosis and a narrowed disc.

Dr. Nair's records showed that petitioner reported her pain began on February 24, 1982. Dr. Nair wrote that after the July 1981 accident, petitioner "was sore for a few days and had some pain which did go away. Apparently, the pain she described in July 1981, and February 1982, are two different types of pain." All tests performed on petitioner were normal, and Dr. Nair concluded that the reason for her backache was not clear. The Commission was entitled to rely on the medical records of Drs. Huber and Nair and was entitled to reject the opinions of Dr. Garrison.

■ The Commission also had the right to rely on the fact that petitioner failed to show that she sought medical care for the back, after the initial emergency-room visit and X rays, for seven months after the accident. (See *Swindle v. Industrial Com.* (1984), 126 Ill. App. 3d 793, 467 N.E.2d 1074; *Dunker v. Industrial Com.* (1984), 126 Ill. App. 3d 349, 466 N.E.2d 1255.) During that time she missed no time from work. We conclude that the Commission's decision is not against the manifest weight of the evidence.

■ Petitioner argues that the decision of the arbitrator in her favor should be given consideration. The Commission, however, exercises original jurisdiction and is not bound by the arbitrator's findings. *Berry v. Industrial Com.* (1984), 99 Ill. 2d 401, 459 N.E.2d 963; *Dunker v. Industrial Com.* (1984), 126 Ill. App. 3d 349, 466 N.E.2d 1255.

For the foregoing reasons, the judgment of the circuit court of Peoria County confirming the decision of the Industrial Commission is affirmed.

Judgment affirmed.

BARRY, P.J., and WOODWARD, McCULLOUGH, and KASSER-MAN, JJ., concur.