ROBERT E. COOK, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Caterpillar Tractor Company, Appellant).

Third District (Industrial Commission Division)   No. 3—87—0047WC

Opinion filed October 13, 1988.—Rehearing denied December 16, 1988.

McCULLOUGH and McNAMARA, JJ., dissenting.

Forrest D. Serblin, of Peoria, for appellant.

Ronald E. Halliday, of Peoria, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The petitioner, Robert E. Cook, filed an application for adjustment of claim under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*), for a knee injury suffered while he was employed by the respondent, Caterpillar Tractor Company. An arbitrator awarded the petitioner temporary total and permanent partial disability. The Industrial Commission (the Commission) reversed the arbitrator's award, finding that the petitioner failed to prove that he sustained an accidental injury arising out of and in the course of his employment. The circuit court found the Commission's decision to be clearly against the manifest weight of the evidence, vacated the Commission's decision and reinstated the award of the arbitrator. The respondent has perfected this appeal.

At a hearing before the arbitrator, the petitioner gave the following testimony on direct examination. He began working for the respondent in November of 1977. For three months prior to March 25, 1978, the alleged date of injury, the petitioner had been working on the assembly line, hand-tightening engine bolts with a five-foot-long torque wrench. To tighten each of the 30 to 40 bolts per engine, the petitioner would have to brace himself to pull on the wrench. The process involved considerable use of his legs, including bending and twisting of the knees.

Approximately one month before March 25, the defendant began to notice that when he was using the torque wrench, his knees were stiff and in pain. During the ensuing month, the petitioner soaked his legs in a hot bath after work and applied a heating pad to his knees. In the morning, the petitioner had to work the stiffness out of his knees, especially the right knee. On Friday, March 25, 1978, the petitioner noticed that his right knee was more painful than usual. He did not stop working that day. The next morning, as the petitioner was getting out of the bathtub, his right knee locked in a bent position. He and his wife were eventually able to work the knee into a straight position. The following Monday, March 28, the petitioner testified that he called the respondent about his knee. He then saw Dr. Font, his family doctor. Dr. Font instructed the petitioner to stay off his leg for one week and to see Dr. Jay Alameda, an orthopedic surgeon. The petitioner saw Dr. Alameda sometime during that week and returned to work on the following Monday, April 4.

While at work on April 4, the petitioner's knee again locked up. He went to see the company nurse, who informed him that the injury was not work-related and that the company could do nothing about it.

The petitioner did not return to work that day.

The petitioner again went to see Dr. Alameda. The doctor advised the petitioner that his knee required surgery. Surgery was performed on or about April. 24, 1978. Thereafter, the petitioner returned to work but was restricted to light duty. The petitioner continued to see Dr. Alameda as his knee did not improve. On January 19, 1979, Dr. Alameda operated for a second time on the petitioner's knee.

The petitioner testified that at no time prior to March 25, 1978, had he experienced any knee or leg problems. Prior to March 25, he had not been engaged in any other strenuous physical activities. At the time of the arbitration hearing, the petitioner testified his knee would swell and cause him pain. He could only walk short distances. His knee clicked and popped when he bent it.

On cross-examination, the petitioner stated that he told Dr. Alameda that he had been getting around well until his knee locked up. He denied telling the doctor that his injury was caused by a fall when he was getting out of the bathtub.

The respondent presented into evidence a company claim form for weekly disability benefits. On the form, the defendant answered "no" to the question: "Was an accidental injury involved?" The petitioner explained that he thought that the term "accident" meant "something happening, *** like a car accident is an accident."

Debra Cook, the petitioner's wife, testified that on March 26, 1978, she had to help the petitioner get out of the bathtub because he could not straighten his knee. Debra said that the petitioner was in pain. She knew that the petitioner had been taking hot baths for his knees. According to Debra, the petitioner had not participated in any sports activities prior to the day in question and did not have knee difficulties before working for the respondent.

The deposition of Dr. Gordon Shultz was admitted into evidence. Dr. Shultz, a board-certified orthopedic surgeon, testified that he examined the petitioner in May of 1982. His diagnosis was that the petitioner was suffering from traumatic arthritis of the right knee. In the doctor's opinion, the petitioner's condition was progressive and permanent. Dr. Shultz was asked a hypothetical question by the petitioner about the cause and source of a person's injury in a situation similar to that of the petitioner. The doctor replied that the cause of the injury would be torn cartilage in the knee and that the source of the injury was work-related. On cross-examination, when asked a hypothetical question by the respondent in which the knee of a person with no prior knee complaints locked up while he was stepping out of a bathtub, the doctor was still of the opinion that the injury was

work-related. However, according to the doctor, if the petitioner fell first and then his knee locked, then the fall could have caused the injury. Dr. Shultz opined that the petitioner's work activity was the type of activity that could have caused his knee problems.

Lastly, the deposition of Dr. Alameda was admitted into evidence. Dr. Alameda testified that he took a history from the petitioner following his admission into Proctor Hospital on April 21, 1978. According to the history, the petitioner stated that he had been doing well until two weeks earlier when he started to get out of the bathtub and fell from his knee being locked. The petitioner was in Dr. Alameda's office the following Monday, at which time the doctor believed that the petitioner had a sprained knee. The petitioner returned two weeks later on a Friday. Dr. Alameda examined the knee, discovering a loose body in the knee joint. On April 24, 1978, Dr. Alameda operated on the petitioner, removing a piece of loose cartilage from his knee.

During approximately the next nine months, Dr. Alameda saw the petitioner several times. On several of those occasions, the petitioner complained of right knee pain. Also, fluid had to be drained from that knee. On January 19, 1979, Dr. Alameda again operated on the petitioner's knee. The doctor found a cartilage tear in the knee. On subsequent visits to Dr. Alameda, the petitioner continued to complain of pain in his right knee.

On direct examination, the petitioner posed to Dr. Alameda a hypothetical question assuming facts similar to those presented by the petitioner. The doctor opined that the cause of the hypothetical person's knee injury could have been work-related.

On cross-examination, Dr. Alameda stated that his medical history suggested that the onset of the petitioner's knee problems would have been two weeks before his April 21, 1978, operation, or April 9 or 10. The doctor stated that in completing the back side of the petitioner's weekly disability benefits form, he had answered "no" to the question: "In your opinion was the patient's disability caused by an injury at work?" In response to a hypothetical question by the respondent regarding a patient who was healthy until April 9 or 10, 1978, when "he was getting out of the bathtub and he fell, and the knee was locked," the doctor opined that the injury would have occurred on April 9 or 10 and would not have been work connected. The record does not indicate any denial by Dr. Alameda that he saw the petitioner for a knee problem during the week of March 27.

Based on the above, the arbitrator awarded the petitioner 46.14 weeks of temporary total disability and compensation for a 35% permanent loss of use of his right leg. The award was reversed by the

Commission. We note that the Commission on review based its decision solely on the evidence before the arbitrator. The parties presented no new evidence to the Commission.

The respondent's first argument on appeal is that the petitioner failed to give notice of the accident within the required statutory time period. The respondent contends that it first received notice of the accident when the petitioner filed his application for adjustment of claim on October 15, 1980. The petitioner responds that on March 28, 1978, he gave the respondent oral notice of the injury. The petitioner also asserts that he gave notice on April 4, 1978, when he saw the company nurse after his knee locked up while at work. The Commission did not make a finding on this issue.

Section 6(c) of the Act provides in pertinent part that oral or written notice of the accident shall be given to the employer as soon as practicable, but not later than 45 days after the accident. (Ill. Rev. Stat. 1985, ch. 48, par. 138.6(c).) The notice provision of the Act is to be liberally construed. *Atlantic & Pacific Tea Co. v. Industrial Comm'n* (1977), 67 Ill. 2d 137, 364 N.E.2d 83.

■ In the instant case, the petitioner testified that on March 28 he called the respondent regarding his injury on Friday, March 25. The disability benefits form indicates that the respondent approved benefits for the petitioner on April 17, 1978. The respondent offered no witnesses to dispute the petitioner's testimony regarding notice. Thus, liberally construing the Act with regard to the above evidence, we find that the respondent received notice of the petitioner's injury within the statutory 45-day period.

The respondent's recited issue on appeal is whether the Industrial Commission's finding that employee did not sustain accidental injuries arising out of and in the course of his employment is consistent with the manifest weight of evidence. The respondent contends that there is ample evidence to show not only that the petitioner's injury was not work related, but also that the injury did not actually occur on March 25, 1978.

The respondent emphasizes several elements of the record. First, the respondent argues that the petitioner's testimony conflicts with the history he gave Dr. Alameda. Based on that history, Dr. Alameda concluded that the petitioner was disabled because of a fall in the bathtub. Next, the respondent argues that in response to a hypothetical question where a patient with no prior knee complaints fell in a bathtub, resulting in his knee's locking up, Dr. Shultz agreed that the fall could have caused the injury. The respondent notes that in response to the same hypothetical question, Dr. Alameda stated that the

injury would not be work related. And, further, the petitioner had stated that he performed his regular duties on March 25, 1978, without complaining of or receiving treatment for knee problems. Also, on the weekly disability benefits form, both the petitioner and Dr. Alameda indicated that an accidental injury at work was not involved.

The respondent also argues that according to the history which Dr. Alameda took from the petitioner on April 23 or April 24, 1978, the bathtub incident had occurred two weeks earlier. Thus, the respondent argues, the accident occurred approximately April 10 and not March 25 as the petitioner testified, thereby affecting the petitioner's credibility.

The petitioner counters that the circuit court correctly reversed the Commission's denial of compensation. The petitioner notes that Drs. Alameda and Shultz concurred that the injury to a hypothetical person in a situation akin to the petitioner's was work related. The petitioner also notes that he had been in pain and had not engaged in any other knee-threatening physical activities prior to March 25. Both the petitioner and his wife testified that on March 26, 1978, his knee locked up while he was getting out of the bathtub. At the hearing, the petitioner denied telling Dr. Alameda that he fell in the bathtub. As to the weekly disability benefits form, the petitioner argues that he indicated April 10, 1978, as the first day he was disabled because of his injury simply because that was the date he determined that he was unable to return to work. Also as to that form, the petitioner argues that he was unaware of the meaning of the term "accident" in relation to his condition.

■ In a long line of cases, appellate courts have held that the Commission has original jurisdiction; it may both consider evidence that was presented to its fact-finding agent, the arbitrator, and consider evidence that is first presented to the Commission. (See *Pocahontas Mining Co. v. Industrial Comm'n* (1922), 301 Ill. 462, 134 N.E. 160; *Dunker v. Industrial Comm'n* (1984), 126 Ill. App. 3d 349, 466 N.E.2d 1255.) The law is similarly well established that the Commission has authority to determine all unsettled questions and is not bound by the arbitrator's findings, even when it merely reviews the evidence presented at arbitration. Ill. Rev. Stat. 1985, ch. 48, pars. 138.18, 138.19; *Rodriguez v. Industrial Comm'n* (1939), 371 Ill. 590, 21 N.E.2d 741; *Dunker v. Industrial Comm'n* (1984), 126 Ill. App. 3d 349, 466 N.E.2d 1255.

■ In cases where the Commission has rejected the arbitrator's factual findings without receiving any new evidence, it is the function of this court on review to examine the entire record and weigh the

evidence to determine whether the factual findings of the Industrial Commission were against the manifest weight of the evidence. (*Wirth v. Industrial Comm'n* (1974), 57 Ill. 2d 475, 312 N.E.2d 592.) While recognizing that the Commission is in no way bound by an arbitrator's decision, we note that the arbitrator's decision is not without legal effect. (See *Quick v. Industrial Comm'n* (1972), 53 Ill. 2d 46, 289 N.E.2d 617; see also *Lewandowski v. Industrial Comm'n* (1969), 44 Ill. 2d 204, 254 N.E.2d 520.) Further, we note that in performing its role as reviewer of the record, the Commission is at a practical disadvantage as compared to the arbitrator. The arbitrator, having heard the live testimony, is actually in a better position to evaluate that evidence. See *Luckenbill v. Industrial Comm'n* (1987), 155 Ill. App. 3d 106, 507 N.E.2d 1185; compare *Peabody Coal Co. v. Industrial Comm'n* (1924), 311 Ill. 338, 143 N.E. 90.

Accordingly, in cases where the Commission has rejected the arbitrator's factual findings without receiving any new evidence, we apply an extra degree of scrutiny to the record in determining whether there is sufficient support for the Commission's decision.

In the case at hand, the version of the petitioner's accident in Dr. Alameda's history is contradicted by the petitioner and his wife. They both state that the petitioner's knee locked as he was getting out of the bathtub. The petitioner denied falling in the tub. And, though it is true that in spite of his pain the petitioner did not stop working on March 25, 1978, the last day of his work week, Dr. Shultz testified that the petitioner could have torn a fragment of cartilage in his knee that day, and that the fragment could have remained loose until the next day when it lodged itself, causing the petitioner's knee to lock.

While Dr. Alameda indicated belief that there was no causal connection between the petitioner's injury and his job, he did state that the source of a knee injury suffered by a hypothetical person under circumstances similar to the petitioner's would be work connected. Further, Dr. Shultz strongly indicated that the cause of an injury suffered by a person placed similarly to the plaintiff would have been related to his work activity.

■ Of significance is the evidence that prior to March 25, 1978, the petitioner had no medical difficulties with his knees. A chain of events which demonstrates a previous condition of good health, an accident, and a subsequent condition of ill being resulting in disability may be sufficient circumstantial evidence to prove a causal nexus between the accident and the employee's injury. *International Harvester v. Industrial Comm'n* (1982), 93 Ill. 2d 59, 442 N.E.2d 908.

■ Also, we note that the petitioner's negative answer to the

question on the disability benefits form of whether an accidental injury was involved is not dispositive. It is only one factor to be considered in evaluating his claim. (*Atlantic & Pacific Tea Co. v. Industrial Comm'n* (1977), 67 Ill. 2d 137, 364 N.E.2d 83.) Certainly, the petitioner could not be expected to know the legal definition of the word "accident" as it is used in the Act. *Luckenbill v. Industrial Comm'n* (1987), 155 Ill. App. 3d 106, 507 N.E.2d 1185.

■ We further note that when a worker's physical structure gives way under repetitive job-related stresses on a body, the injury is considered to arise out of and in the course of employment. (*Interlake Steel, Inc. v. Industrial Comm'n* (1985), 130 Ill. App. 3d 269, 474 N.E.2d 402.) Here, the petitioner presented evidence that his knee injury was caused by the repetitive stress of tightening hundreds of large engine bolts.

■ Our consideration of the entire record, including the testimony of the petitioner, his wife and Drs. Alameda and Schultz, suggests that in the light of the arbitrator's contrary conclusions, and in the absence of any evidence before the Commission other than the arbitration record, the Commission's conclusions that the petitioner failed to prove that his accidental injuries arose out of and in the course of his employment were against the manifest weight of the evidence. We adopt Circuit Judge Robert Manning's cogent analysis that follows:

> "This Court is well aware of the requirement that in order to reverse the decision of the Illinois Industrial Commission that decision must be against the manifest weight of the evidence. In the case at bar, the only evidence considered by the Commission was that introduced before the arbitrator; no additional evidence was presented on review before the Commission. A careful consideration of that evidence indicates that there was a factual question before the arbitrator and thus before the Commission. However, simply because there was [a] question of fact before the Commission does not mean that the decision of the Commission must arbitrarily be followed. The decision of the Industrial Commission must be founded upon a sensible conclusion which cannot be considered contrary to the manifest weight of evidence in the case. It is not the test to simply state that there is a question of fact present, and the Commission's finding will stand; that finding of fact must not be against the manifest weight of the evidence. It is the opinion of the Court that *** a concise reading of the testimony of the petitioner, his wife, the treating physician of petitioner, and the examining

physician of petitioner shows by clear and convincing proof that the petitioner sustained an accidental injury as alleged in his petition. The Commission's decision to the contrary is clearly against the manifest weight of the evidence and must be reversed."

Accordingly, we find that the petitioner was entitled to compensation.

We affirm the decision of the circuit court vacating the Commission's decision and reinstating the arbitrator's award of benefits to the petitioner.

Affirmed.

WOODWARD and CALVO, JJ., concur.

JUSTICE McCULLOUGH, dissenting:

As pointed out, the law is clear that the reviewing court will not disturb the findings of the Industrial Commission when they are not against the manifest weight of the evidence. (*U.S. Industrial Chemical Co. v. Industrial Comm'n* (1986), 143 Ill. App. 3d 881.) The Industrial Commission has the responsibility for determining the facts and drawing inferences from the complete evidence and a court will not overturn the Commission's findings simply because a different inference could be drawn, or otherwise substitute its judgment for that of the Commission. *Niles Police Department v. Industrial Comm'n* (1981), 83 Ill. 2d 528.

In this case, there is more than sufficient evidence for the Industrial Commission to determine that the petitioner should not recover. There was evidence that the petitioner on a company form indicated that an accidental injury was not involved. Petitioner on that disability form answered "no," an accidental injury was not involved. If he had answered "yes" to that question, "Was an accidental injury involved," he would have also been required by the form to show that "date," "place," "details of the accident," and "whether the accident happened while on the job at Caterpillar."

The only doctors to testify in this case were the doctors of the petitioner's choice. Dr. Alameda had been the petitioner's doctor before this particular incident. With respect to the history given by the patient, Dr. Alameda testified:

"He gave a history that he was doing well until two weeks before the examination when he started to get out of the bath tub and fell from the knee being locked."

The doctor's testimony is not clear as to when he first saw the peti-

tioner with respect to this accident. He first testified that he saw the petitioner on April 21, 1978. He then testified concerning seeing him on April 23, 1978, and also that he saw the petitioner on April 10, 1978. The doctor, on a disability form, checked that the patient's disability was not caused by an injury at work. His testimony also was not clear as to whether the incident that the petitioner related to him occurred two weeks prior to April 21 or April 24, 1978, or two weeks prior to April 10, 1978. The doctor did testify that there would be no connection between the injury and the work if the incident occurred on April 10, 1978. Regardless of the doctor's recollection and testimony as to dates, the Commission could determine according to the testimony of the doctor that the petitioner fell in the bathtub and the injury was not work related.

The respondent's arguments concerning the record in this case dictate against reversal of the Commission. Petitioner's testimony did conflict with the history he gave to Dr. Alameda. Dr. Alameda did conclude that a fall in the bathtub caused the disability. Both Dr. Shultz and Dr. Alameda, in answer to a hypothetical question, based upon facts in the record, stated the injury was not work related. As indicated by the majority, the petitioner performed his regular duties on March 25, 1978, made no complaints, and both he and Dr. Alameda indicated on the disability form an accidental injury at work was not involved.

In order to overturn the decision of the Industrial Commission in this case, we must find that it is against the manifest weight of the evidence. Whether evidence is conflicting or of such a nature that different inferences that may be drawn therefrom, a reviewing court will not disregard a permissible inference that may be drawn. (*Sterling Steel Casting Co. v. Industrial Comm'n* (1979), 74 Ill. 2d 273.) As the Commission is the judge of the credibility of the witnesses and the weight to be given to their testimony, it is for the Commission to decide which of the conflicting medical opinions in a case is to be accepted. *Caterpillar Tractor Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 35.

Additionally, no importance should be given or any application of additional scrutiny to the record be made to the Commission's rejecting the arbitrator's factual findings without receiving any new evidence. Additional evidence may be presented to the Commission only when such evidence:

> "(1) relates to the condition of the employee since the time of the arbitration hearing, (2) relates to matters that occurred or conditions that developed after the arbitration hearing, or (3)

was, for good cause, not introduced at the arbitration hearing." Ill. Rev. Stat. 1985, ch. 48, par. 138.19(e).

There are cases where the manifest weight of the evidence question is close. In this particular case, the question is not close and we should not overturn the decision of the Industrial Commission. Of equal importance, a reviewing court should also be wary of eroding the responsibility of the Commission as it pertains to arbitrators' decisions. Such action tends to destroy the legislative purpose of the Industrial Commission's responsibility.

McNAMARA, J., concurs.