(No. 25172.— )

MICHAEL GARBOWICZ, Defendant in Error, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(THE YOUNGSTOWN SHEET
AND TUBE COMPANY, Plaintiff in Error.)

*Opinion filed February 13, 1940—Rehearing denied April 3, 1940.*

KNAPP, ALLEN & CUSHING, (JOSEPH L. EARLYWINE,
and HARLAN L. HACKBERT, of counsel,) for plaintiff in
error.

JOSEPH L. OSAJDA, for defendant in error.

Mr. JUSTICE JONES delivered the opinion of the court:

Michael Garbowicz filed an amended claim for compensation under the provisions of the Workmen's Compensation act, against the Youngstown Sheet and Tube Company, alleging two accidental injuries, one on February 10, 1937, and another on February 26, 1937. The first injury is alleged to have been incurred by a bolt thrown by the foreman to Garbowicz without warning, striking him in the left groin and left testicle. The second is claimed to have been in the left groin while pulling a heavy-box truck with another employee. The arbitrator awarded him compensation for temporary total disability from February 27 to July 28, 1937, and for medical, surgical and hospital service. On review, the Industrial Commission heard the cause on the record without further testimony, and set aside the decision of the arbitrator, with a finding that Garbowicz sustained accidental injuries on February 26, but did not, as a result thereof, suffer any disability or sustain any loss for which compensation was payable under the act. No finding was made as to the alleged accident on February 10. On *certiorari,* the circuit court of Cook county entered an order finding "that the Industrial Commission having heard no evidence in addition to the evidence heard before the arbitrator, had no power to set aside the award of the arbitrator, unless it be contrary to the manifest weight of the evidence, and that the award of the arbitrator herein was not contrary to the manifest weight of the evidence and should not have been set aside by the Industrial Commission." The decision of the commission was set aside and the award of the arbitrator confirmed. The cause is here by writ of error.

The questions presented are whether the holding of the trial court as to the power of the commission is correct, and whether the decision of the commission is against the manifest weight of the evidence. The functions of an arbitrator and the powers of the commission in relation thereto are no longer open questions in this State. The arbitrator

is but the agent of the commission similar in character to a master in chancery or a referee in bankruptcy. (*Pocahontas Mining Co.* v. *Industrial Com.* 301 Ill. 462.) Regardless of whether the commission hears testimony in addition to that heard by the arbitrator, it exercises an original jurisdiction and is in no way bound by the arbitrator's findings. *Rodriquez* v. *Industrial Com.* 371 Ill. 590.

This leaves for consideration the question whether the commission's findings on issues of fact are against the manifest weight of the evidence. A general finding of the commission in favor of one party is, in effect, a favorable finding on each and every special matter necessary to support the general finding. (71 Corpus Juris, (Workmen's Compensation Acts,) 1181.) Under the commission's general finding in favor of the employer, denying compensation, the failure to make any finding as to the alleged accidental injury on February 10 is taken as adverse to Garbowicz on that issue. It is not within the province of a court to disturb findings of fact made by the commission, unless manifestly against the weight of the evidence. (*Rodriquez* v. *Industrial Com. supra; Czerny* v. *Industrial Com.* 369 Ill. 275.) On the other hand, if the finding of the commission is against the manifest weight of the evidence it is the duty of the court to set the decision of the commission aside. (*Berry* v. *Industrial Com.* 335 Ill. 374; *Porter* v. *Industrial Com.* 352 id. 392.) This necessitates an examination of the testimony.

On February 10, 1937, Joseph Hanke, the foreman, removed a bolt from the concrete floor with a sledge hammer and tossed it to Garbowicz. According to Hanke, it was about one and one-half inches in diameter and weighed about one-half a pound. Garbowicz testified Hanke gave him no signal; that he was putting on his gloves and the bolt struck him in the left groin and left testicle, causing a sharp pain; that he and Hanke had an argument about it, Hanke claiming the bolt did not strike him, and that he,

Garbowicz, reported to the office; that Hanke put him on lighter work until February 26, and that the pain recurred on the third day. As to this incident, Hanke testified Garbowicz was looking at him and watching when the bolt was tossed; that he caught it in his right gloved hand, dropped it to the floor, and went on with his work, and did not then, or later, complain of being hurt; that they were through with that job and from then on up to February 26, Garbowicz worked at trucking, operating a machine and whatever they had for him to do. On cross-examination, he admitted Garbowicz did complain to him at the time of the alleged accident that he was struck by the bolt and that they argued about it. Nobody testified that Garbowicz did not report the incident to the office on that occasion.

Garbowicz further testified that on February 26, he was pulling, and Vernon Jones, another employee, was pushing, a heavy-box truck weighing about 1700 pounds; that the boxes usually weighed from 1100 to 1300 pounds; that ordinarily three men were employed on that job and he asked Hanke for additional help, but Hanke told him he could not spare another man; that about 9:45 A. M. while he was so engaged, he felt a sharp pain in his left side and reported to Hanke that it was in the same place where he was struck by the bolt; that Hanke profanely denied his having any pain and told him if he did not like his work to report to the office and get his money and he would be discharged; that he returned to work and at 11:00 o'clock vomited his breakfast; that before noon Hanke furnished a third man on the truck; that about 1:00 o'clock he vomited his lunch and felt pain all afternoon, complaining at lunch time to those with whom he ate; that he worked until 3:30 that afternoon, went home and, after asking his wife to call a neighbor, became unconscious and so remained until he came to at the St. Francis Hospital at 9:00 o'clock the next morning. Hanke testified Garbowicz did not complain to him of any pain or ask for additional help;

that, according to custom, the extra man was put on when the load was to be hauled a greater distance, and the loads usually ran from 600 to 1400 pounds; that he reprimanded Garbowicz for not pulling his part of the load and threatened to discharge him.

Vernon Jones testified that he did not see Garbowicz stumble, slip or fall, and he made no complaint to him of being hurt. On cross-examination he said that Garbowicz left the truck and went to speak to Hanke, and he did not hear Hanke call Garbowicz or hear the conversation, and that Garbowicz at no time refused to work or to pull while he was working with him.

At about 6:00 P. M., February 26, Dr. Steven F. Witt was called to the Garbowicz residence. He testified that he found him in convulsions, frothing at the mouth and being held in bed by four or five men; that morphine was administered twice, and upon examination of the abdomen and scrotum he found no hernia or evidence of injury. His diagnosis was epilepsy.

At the hospital Garbowicz was attended by doctors McGill and Fillis, who treated him until March 15, when he was discharged. Dr. Fillis was called into the case on March 3. He testified he found a tenderness in the left abdomen and groin, with a painful tender spermatic cord; that the patient was unable to void his urine and had to be catheterized; that he cystoscoped the patient and was unable to find any infection of the urinary tract, either of the kidneys, bladder or prostate; that he found no tumor, discoloration or mass, and nothing in that region; that he was sure the condition was not due to a peritoneal infection, because they could get him to relax. One week after his first examination, Dr. Fillis found a faint yellowish discoloration in the left groin, as though from a subcutaneous hemorrhage. Dr. McGill, who takes care of the company's injury cases, testified similarily. An ice pack was used as treatment. He testified Garbowicz told him he was injured

on February 10, but did not tell him how; that he found no external evidence of injury and no objective symptoms; that his diagnosis was funiculitis, an inflammation of the spermatic cord, the common causes of which are infection and trauma. In his opinion, if Garbowicz had been struck in the region of the scrotum on February 10, and had sufficient trauma at that time to cause the symptoms found on February 26, it would have been sufficient to cause immediate disability, and in his opinion the condition he found was not due to injury. On cross-examination he said Garbowicz could have had a mild degree of trauma on February 10 and work from that time to February 26.

On March 25, Dr. Rudersdorf was called to see Garbowicz. He complained of pain in his left groin. The findings were pain on pressure and his left lower abdomen was quite rigid. The doctor had him moved to the hospital again and, with Dr. Fillis, treated him until May 2, when he was discharged, but still complained of slight pain on pressure. Dr. Fillis testified the symptoms were essentially the same as before, with increase of pain out of proportion to the physical findings, which were negative, with no masses. The patient was cystoscoped again and the urinary tract was thoroughly examined, but no additional information was obtained. An ice pack was used as before and later diathermy treatments were administered. Garbowicz improved and was discharged on May 2, with advice to go home and rest, with local applications, and to remain under observation.

Garbowicz testified he applied for work at plaintiff in error's plant, but was denied a job and went to work at the Bismarck Hotel on June 17 as houseman, doing dusting and other light work, but that the pain returned and his side was swollen. At the request of Dr. Rudersdorf, Dr. Luessman came to see him on July 4. Dr. Luessman testified there was a large area of greenish blue discoloration in the left groin and two subcutaneous swellings; that, on

his advice, Garbowicz was taken to the hospital on July 7; that, on that day, he incised the area and found in there an area of fine hemorrhage, old, partially organized blood clots just over the Pupart's ligament, beginning to turn into scar tissue; that he removed them, after which the patient went through the usual post-operative process, and the pain was relieved; that the incision healed by July 26 and the area became apparently normal; that he attributed the cause to trauma; that funiculitis may be caused either by infection, bacterial invasion or trauma; that if caused by trauma the length of time when it would be manifest would depend upon its location and severity and if severe enough, it would show immediately; that the hemorrhage was not recent by any means; that he based his opinion that it was trauma on the discoloration and large amount of hemorrhage in the tissue; that it was difficult to say how long it had been there, but he would say it might have been there for a couple of months at least; that it was pretty deep and it takes time for those things to get up; that an injury severe enough to cause the condition he found would not necessarily disable the man immediately; that the fact that an examination on the date of the claimed injury disclosed no discoloration would not change his opinion, and that it could scarcely be an infection of the blood stream secondary to trauma.

Garbowicz re-entered employment at the hotel on July 28, and has since had no return of the trouble. The fact that Dr. Witt diagnosed the trouble as epilepsy on the night of February 26, and that Garbowicz had fainting spells more than four years prior to the alleged accident, including a sick spell from drinking a quart of milk in 1933, has no bearing on any issue in the case. It is not claimed by anybody that they could have had any possible connection with the conditions found. While infection or bacterial invasion may sometimes cause funiculitis, there is no testimony in the record that there was any infection or bacterial in-

vasion present in this case, and they are excluded as a cause by the testimony of Dr. Fillis and Dr. Luessman. This leaves a trauma as the only source of the conditions found. The testimony of Dr. Luessman shows there was a deep, long-existing, mild trauma, which had not manifested itself by discoloration when Dr. McGill examined Garbowicz on February 26. The mild discoloration which appeared ten days later had apparently subsided from the ice pack treatment, because Dr. McGill testified that when Garbowicz left the hospital on March 15, there were no objective symptoms, but he also testified Garbowicz still complained of pain. Nobody attempted to attribute the trauma to any cause other than the accident by which Garbowicz testified he was injured. The symptoms continued in varying degree from the time he was injured until he was operated upon. The finding of the commission is so manifestly against the weight of the evidence, that it was properly set aside by the circuit court.

The judgment confirming the award of the arbitrator is accordingly affirmed.

*Judgment affirmed.*