ORKIN EXTERMINATING COMPANY, INC., Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.* (Peter J. Apponey, Appellee).

Third District (Industrial Commission Division)   No. 3—86—0819WC

Opinion filed June 17, 1988.—Rehearing denied August 25, 1988.

Stephen J. Heine, of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Gregory J. Saunders, of Perz, McGuire, Condon & Ridge, of Chicago, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

For each of two consolidated claims, the arbitrator denied an award, but the Industrial Commission (the Commission) awarded the petitioner, Peter J. Apponey, temporary total benefits and necessary medical expenses under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). The Commission remanded to the arbitrator for proceedings on the issue of permanent disability. (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(b).) The circuit court confirmed. The respondent Orkin Exterminating Company, Inc., brought the instant appeal.

On appeal, the respondent argues that the Commission's decision was based upon conjecture and speculation. The respondent further argues specifically that the Commission's findings of accidental injury and adequate notice are against the manifest weight of the evidence. We reverse.

In 1985, the petitioner was 37 years old and approximately six feet tall; he weighed about 218 pounds. He was employed by the respondent to inspect and treat residential and commercial property. The petitioner testified before the arbitrator that while he was working for the respondent on July 17, 1985, checking rodent infestation at the Carnet Grain Company in Beardstown, he leaned over the edge of a walkway to pry with a screwdriver. When he pulled himself up from that position, he noticed a pain down his left leg. According to the petitioner, at first the pain did not bother him much and he continued to work. That day Mr. Joseph Henderson, the respondent's branch manager and the petitioner's direct supervisor, had accompanied the petitioner to the work site. The two men, using one car, rode together back to their office in Galesburg. The petitioner did not mention any injury to Mr. Henderson.

According to the petitioner, the following afternoon the pain started bothering him. He continued to work and within the next few days complained about his leg to fellow employees. His co-workers denied that the petitioner had stated he had been hurt at work.

On August 2, 1985, the petitioner had his first medical treatment following the July 17, 1985, incident. He saw chiropractor Dale Glendenning. In his admission form to Dr. Glendenning, the petitioner stated that his condition of leg pain first started two months earlier. He also wrote "?" in the blank labeled "If Known State Cause of Pain." Glendenning took pretreatment X rays, which showed no herniated lumbar disc, performed chiropractic manipulations, and scheduled additional appointments which the petitioner did not keep.

On August 6, 1985, the petitioner was inspecting the Louis Keeling residence for termites. He testified that while he was inspecting in a crawl space, he moved a two-by-four board and a piece of concrete block. He felt a pulsating pain followed by great pain in his left leg and hip. The next day or so thereafter, as manager Henderson acknowledged, the petitioner told Henderson that he could no longer work crawl spaces as they were "tearing [his] leg up."

According to the petitioner, on August 7 he sought medical attention from orthopedic surgeon Edward G. Law. The petitioner continued to work for the respondent until he was first able to see Dr. Law on August 20. Dr. Law prescribed 10 days of bed rest. However, despite his stiffness and leg pain, the petitioner continued to work until August 28, in order not to lose pay.

The petitioner again saw Dr. Law on August 30, 1985. Dr. Law had the petitioner admitted to the hospital. The doctor then arranged supervised bed rest, a myelogram, and a CT scan. He diagnosed the petitioner as having a ruptured disc at L4—L5 and he surgically removed a large extruded fragment of ruptured disc material on September 9. Manager Henderson visited the petitioner in the hospital following the surgery. There, according to Mr. Henderson, the petitioner first told Henderson that he had injured his back or legs at the Carnet Grain Company and at the Keeling residence. The petitioner did not, however, according to Mr. Henderson, describe the Carnet accident.

On cross-examination at the arbitration hearing, the petitioner initially stated that he was not currently working. Upon further questioning, however, he stated that in December of 1985 he had begun "paper work" for A-car, a now-defunct used car dealership; he continued occasional A-car work at least up to the day before the arbitration hearing. The petitioner gave sketchy answers to questions about the circumstances of his work at A-car and ultimately testified that he had been doing undercover police work for the Secretary of State. Also on cross-examination, the petitioner admitted that his application with the respondent omitted various prior jobs, including some undercover police work, and that in connection with one of those prior jobs he had received workers' compensation for a back injury.

The arbitrator denied compensation. Regarding the July 17 accident, he found that the injuring incident as testified to by the petitioner, i.e., pulling up from leaning over, would not constitute an accident under the Act. He also found no proper notice as there was no indication that the petitioner had "described" the alleged incident prior to the arbitration hearing. Similarly, the arbitrator found both

that the petitioner failed to prove accidental injuries arising out of his employment on August 6 and that there was no proper notice as there was no indication that the petitioner had "described" the accident prior to the hearing.

On the petitioner's review, the Commission considered the record but received no additional evidence. The Commission found that the petitioner sustained accidental injuries arising out of and in the course of his employment both on July 17, 1985, and on August 6, 1985. It further found that timely notice was given for each accident. Specifically on the notice issue, the Commission observed that the respondent had notice of the petitioner's left leg complaints and their relation to his working in crawl spaces. Without reference to specific facts, it also found that the unrebutted testimony of the petitioner and manager Henderson established timely notice of the August 6 accident. It additionally found that the "respondent was not prejudiced by defective notice of the first accident, particularly since Petitioner's temporary total disability and medical expenses are causally related to the accident of August 6 ***." The Commission awarded temporary total disability for 23²⁄₇ weeks and $11,701.41 in medical expenses. It remanded for the arbitrator to consider permanent injury.

In its argument on appeal from the circuit court's confirmation of the Commission's award of benefits, the respondent argues that the Commission's findings on causal connection and timely notice were improper or against the weight of the evidence. In response the petitioner notes that factual findings, including findings on witness credibility, are primarily for the Commission. He argues that the Commission's decision should not be set aside as it was not against the manifest weight of the evidence.

■■ In a long line of cases, appellate courts have held that the Commission has original jurisdiction; it may both consider evidence that was presented to its fact-finding agent, the arbitrator, and consider evidence that is first presented to the Commission. (See *Pocahontas Mining Co. v. Industrial Comm'n* (1922), 301 Ill. 462, 134 N.E. 160; *Dunker v. Industrial Comm'n* (1984), 126 Ill. App. 3d 349, 466 N.E.2d 1255.) The law is similarly well established that the Commission has authority to determine all unsettled questions and is not bound by the arbitrator's findings, even when it merely reviews the evidence presented at arbitration. Ill. Rev. Stat. 1985, ch. 48, pars. 138.18, 138.19; *Rodriguez v. Industrial Comm'n* (1939), 371 Ill. 590, 21 N.E.2d 741; *Dunker v. Industrial Comm'n* (1984), 126 Ill. App. 3d 349, 466 N.E.2d 1255.

■ It is one of the functions of this court on review to determine

whether the factual findings of the Industrial Commission were against the manifest weight of the evidence. (*Wirth v. Industrial Comm'n* (1974), 57 Ill. 2d 475, 312 N.E.2d 592.) While recognizing that the Commission is in no way bound by an arbitrator's decision, we note that the arbitrator's decision is not without legal effect. (*Lewandowski v. Industrial Comm'n* (1969), 44 Ill. 2d 204, 254 N.E.2d 520.) Justice Schaefer in *Lewandowski* stated that "[t]he arbitrator's decision is not without legal effect and can be relied upon by the circuit court in entering a judgment when the decision of the Commission is against the manifest weight of the evidence." *Lewandowski*, 44 Ill. 2d at 206-07, 254 N.E.2d at 521-22; see also *Quick v. Industrial Comm'n* (1972), 53 Ill. 2d 46, 289 N.E.2d 617.

■ Proof of either unwitnessed accident alleged in this case depended upon the petitioner's testimony regarding the accident's circumstances and, thus, upon his credibility. His credibility was contradicted by numerous elements in the evidence. For example, on the day of the alleged July 17 accident at the Carnet Grain Company in Beardstown, although the petitioner and his manager after the incident drove together from Carnet to their Galesburg office, the petitioner did not mention to the manager that he had been injured. Additionally, on August 2 when the petitioner was first medically treated for the alleged July 17 injuries, he stated in his chiropractic admission form that his condition had begun approximately two months earlier, *i.e.*, at the beginning of June rather than in middle July as he claimed in seeking benefits. Further, he did not express to his chiropractor on August 2 a connection between his current pain and the July 17 accident and he indicated that he did not know the cause for his complaints.

The petitioner's credibility was also challenged regarding the alleged August 6 accident at the Keeling residence. For example, when the petitioner called his manager from the Keeling job that day, after the alleged incident, he did not mention the injury which he now claims had occurred. Further, following that alleged disabling accident, the petitioner continued to work for approximately three weeks without giving any notice of the incident to the employer.

We note additionally that before denying an award, the arbitrator considered impeachment evidence that the petitioner had materially omitted prior employments from his job application with the respondent. The arbitrator also weighed the petitioner's ultimate acknowledgement that in connection with that undisclosed work, he had sought and received a workers' compensation award for a prior back injury.

We have considered the entirety of the record, including both the petitioner's uncorroborated testimony regarding his two alleged industrial accidents and the factors weighing upon the petitioner's credibility. We conclude that the Commission's conclusions that the petitioner was credible and that he had suffered two accidental injuries under the Act were against the manifest weight of the evidence. Thus, we find that the petitioner was not entitled to compensation. Given that finding, we need not consider the parties' arguments concerning the sufficiency of notice given by the petitioner.

Based on the foregoing, the judgment of the circuit court of Knox County is reversed. The arbitrator's decisions are reinstated.

Judgment reversed; arbitration decisions reinstated.

McNAMARA, WOODWARD, McCULLOUGH, and CALVO, JJ., concur.