ADAMS TRUCK LINES, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Herbert Harney, Appellee).

Third District (Industrial Commission Division)   No. 3—88—0652WC

Opinion filed January 23, 1990.—Rehearing denied March 7, 1990.

McCULLOUGH, J., and BARRY, P.J., specially concurring.

R.J. Lannon, Jr., of Herbolsheimer, Lannon, Henson, Duncan & Reagan, of La Salle, for appellant.

Mark A. Schindler and Peter F. Ferracuti, both of Law Offices of Peter F. Ferracuti, P.C., of Ottawa, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, Herbert Harney, filed an application for benefits based upon an injury he allegedly received on October 7, 1985, while employed by Adams Truck Lines, Inc. The arbitrator denied benefits. The Industrial Commission (Commission) reversed the decision of the arbitrator and awarded benefits to the claimant. The circuit court confirmed the Commission's award. The employer appeals.

Claimant is an over-the-road truck driver. On the morning of October 7, 1985, he drove his truck, which was loaded with 19 pallets of mayonnaise, from his home in Sheridan, Illinois, to Melrose Distribution Company in Melrose Park, Illinois. On the way there, he stopped at a restaurant on Mannheim Road to ask for directions. When claimant arrived at the Melrose Distribution Center, he checked in and waited for an opening to unload the truck. About one-half hour after he arrived, the receiving clerk told him to back his truck into door 6. At the clerk's directions, claimant broke the seal on the truck, backed the truck in, and proceeded to throw out the empty pallets that were at the very back of the trailer portion of the truck. The pallets, empty, weigh about 40 to 50 pounds apiece, depending on what they are made out of. When claimant picked up the fourth pallet and turned to straighten, he experienced a sharp pain down his lower back and down his right leg. Claimant sat down for a few minutes. He then went to his truck, had a cup of coffee, and took a couple of aspirins. He started to climb up the dock, and he then told the forklift operator that he had hurt his back. He placed a call to his employer, and he informed the dispatcher that he had hurt his back and his leg. In response to the dispatcher's questions, he informed him that he preferred to see his own doctor but that he felt well enough to drive the truck. At the dispatcher's direction, he took his empty truck over to another Chicago plant. He then went to his employer's Chicago office, where he informed the manager that he had hurt his back, and he was going to pick up a loaded trailer and go home and see his doctor. When he went to pick up the loaded trailer, he also telephoned his wife and told her to inform his doctor that he had injured his back and to make an appointment for him. He then drove the loaded trailer home. On the way home, he noted that he had a lot of pain in his

lower back and right leg. He was also experiencing muscle spasms.

The next day, October 8, 1985, claimant was examined by Dr. Michael Harney (no relation to claimant). Dr. Harney manipulated him and gave claimant medication for the muscle spasms. Claimant rested the remainder of the day. He left the next day, October 9, 1985, with another load. He noted that he still had quite a bit of lower back pain and muscle spasms.

After resting for a few days, claimant was on his way to deliver a load in Kansas when his condition began to worsen. He called the dispatcher and arranged to switch trailers with a driver in St. Louis. He subsequently returned home with an empty trailer.

Gracelene Dorsett, claimant's sister-in-law, testified for claimant that she and her husband had spent six or seven hours with claimant on October 5 and 6, 1985. She noticed nothing unusual about the claimant.

Dr. Michael Harney testified in his evidence deposition that in his opinion, given the claimant's prior history of back pain, claimant had ruptured a disc which was putting pressure on the root nerve at the level of L5, necessitating disc surgery. It was Dr. Harney's opinion that considering the claimant's prior history of back pain, the accident of October 7, 1985, produced claimant's ruptured disc. Dr. Robert Beatty also was of the opinion that the accident of October 7, 1985, was the cause of claimant's ruptured disc.

David Grant testified on behalf of the respondent. On October 7, 1985, he was employed as a window clerk at the Melrose Distribution Company, Melrose Park, Illinois. On that date, he was working when a man he identified as claimant approached the window in a position as if he were bending down to tie his shoe, hunched over. Claimant informed him that he had hurt his back at a previous stop that morning. Claimant also stated that he had informed his company, and they were sending over a relief driver to take over his position. Grant then assigned him a door so that his truck could be unloaded. The truck was still sealed at that time.

In the afternoon, Grant's immediate supervisor asked if anyone had been injured at Melrose Park during the day. At his supervisor's instruction, he documented the incident with claimant.

Following the hearing, the arbitrator denied benefits to the claimant, finding that he had "failed to prove that accidental injuries arose out of and in the course of the employment."

The claimant appealed the arbitrator's decision to the Commission. Neither party introduced any additional evidence. The Commission reversed the decision of the arbitrator and awarded benefits,

finding as follows:

> "Petitioner, a 47-year old over the road driver sustained an injury to his lower back on October 7, 1985 when he picked up a wooden pallet and twisted to stack it. Although he had previously experienced episodes of back pain, the symptoms for which he was treated subsequent to this accident commenced contemporaneously with the accident. The Commission relies on the testimony of Dr. Harney and Dr. Beatty and finds that the accident caused the herniation of the L4-L5 disc for which they have treated him."

Because there was no evidence in the record as to claimant's average weekly wage, the case was remanded to the arbitrator for further hearings.

The employer appealed the Commission's decision to the circuit court of La Salle County, which confirmed the Commission's decision. This appeal followed.

The first issue on appeal is whether the decision of the Commission was against the manifest weight of the evidence.

■■ The employer notes that in *Cook v. Industrial Comm'n* (1988), 176 Ill. App. 3d 545, this court held that when the arbitrator's factual findings are rejected by the Commission without new evidence, an extra degree of scrutiny is required to determine if there is sufficient basis for the Commission's decision.

In the case before us, the Commission reversed the arbitrator's decision although no other evidence was presented. The employer argues, therefore, that the Commission found claimant a more credible witness than Grant, whom the employer describes as a disinterested party. Further, the employer asserts that claimant's testimony was impeached, which casts severe doubts on his credibility.

The employer contends that the case before us presents a set of facts similar to those in *Orkin Exterminating Co. v. Industrial Comm'n* (1988), 172 Ill. App. 3d 753, recently decided by this court. In *Orkin Exterminating Co.*, we reinstated the decision of the arbitrator finding that the claimant, Apponey, was not entitled to benefits. The Commission had reversed the arbitrator's finding and awarded benefits, which decision was confirmed by the circuit court. We determined that the Commission's decision was against the manifest weight of the evidence. Specifically, we noted:

> "Proof of either unwitnessed accident alleged in this case depended upon the petitioner's [Apponey's] testimony regarding the accident's circumstances and, thus, upon his credibility. His credibility was contradicted by numerous elements in the evi-

dence. For example, on the day of the alleged July 17 accident at the Carnet Grain Company in Beardstown, although the petitioner and his manager after the incident drove together from Carnet to their Galesburg office, the petitioner did not mention to the manager that he had been injured. Additionally, on August 2 when the petitioner was first medically treated for the alleged July 17 injuries, he stated in his chiropractic admission form that his condition had begun approximately two months earlier, *i.e.*, at the beginning of June rather than in [the] middle [of] July as he claimed in seeking benefits. Further, he did not express to his chiropractor on August 2 a connection between his current pain and the July 17 accident and he indicated that he did not know the cause for his complaints.

The petitioner's credibility was also challenged regarding the alleged August 6 accident at the Keeling residence. For example, when the petitioner called his manager from the Keeling job that day, after the alleged incident, he did not mention the injury which he now claims had occurred. Further, following that alleged disabling accident, the petitioner continued to work for approximately three weeks without giving any notice of the incident to the employer." (*Orkin Exterminating Co.*, 172 Ill. App. 3d at 757.)

The employer contends that, like Apponey in *Orkin Exterminating Co.*, the claimant's credibility was severely damaged. The employer points out that one month before his alleged injury, claimant filled out an application for employment with the employer in which he denied having ever suffered a job-related injury, or a back injury, ever receiving workers' compensation benefits for medical expenses or lost time, or having lost time within the last three years because of an injury. However, on cross-examination, he testified that he had suffered a back injury in Idaho in 1980 while employed by a moving company, for which he received benefits. He also received workers' compensation benefits for one week in 1984 when he was injured while working in Illinois. Also in 1984, he had applied for a job with Schneider Transportation. On the job application form, the doctor had written slipped disc, 1981, although the claimant recalled telling the doctor only that he had had a back injury, not a slipped disc.

The employer also contends that claimant's testimony was impeached by that of Dr. Michael Harney. Claimant testified that following the October 7, 1985, injury, he experienced "Charley horses" in his legs. He denied telling Dr. Harney that he had also experienced them after the 1984 injury or that he was experiencing them in both

his feet and his legs in August 1985, a month before he applied for work with the employer. Dr. Harney, however, testified that claimant complained of Charley horses on those prior occasions and, further, that he had treated claimant for back problems since 1981.

Finally, employer argues that claimant's story of being injured in an unwitnessed accident is uncorroborated except for the testimony of his sister-in-law. Moreover, the testimony of David Grant, the window clerk, conflicts with claimant's version of the accident.

■■ ■ It is well settled that the Commission is the judge of the credibility of the witnesses. (*Caterpillar Tractor Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 35, 43.) While we acknowledge that claimant denied receiving workers' compensation benefits on his job application form, he did admit that he had in fact received them. We note further that claimant and his treating physician, Dr. Harney, presented differing testimony as to when claimant first began to suffer from "Charley horses." The dispute in this case is whether the plaintiff suffered an accidental work-related injury. In this case, the foregoing matters are collateral and may not be used to impeach the claimant here. *Pagel v. Yates* (1984), 128 Ill. App. 3d 897, 901.

Moreover, a review of the case before us and *Orkin Exterminating Co.* shows that there is no comparison between the amount of contradiction and impeachment that served to destroy Apponey's credibility in that case and the minor amount of the same in the case before us.

■■ It bears repeating that the issue here is whether claimant suffered a work-related injury. Even David Grant, whose testimony the employer would have us believe over that of the claimant, testified that claimant approached him, hunched over, and told him that he had *injured* himself at a previous stop. While the decision of the Commission makes no suggestion that this case was decided based upon the respective credibility of the claimant and David Grant, assuming as the employer does that this was the case, we can find no reason to disturb the Commission's decision to believe claimant's testimony in this case.

In its second issue on appeal, the employer asks this court to establish a rule authorizing the Commission to reverse the decision of an arbitrator as to compensability if that decision is against the manifest weight of the evidence. In support of this proposition, the employer relies on a 1984 amendment to the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(e)), two decisions of this court, to wit, *Cook v. Industrial Comm'n* (1988), 176 Ill. App. 3d 545, and *Orkin Exterminating Co. v. Industrial Comm'n* (1988), 172 Ill.

App. 3d 753, and the origins of the rule that governs review by the Commission.

■ The employer relies on our statement in *Orkin Exterminating Co.* that an arbitrator's decision is not without legal effect when determining if a decision of the Commission is against the manifest weight of the evidence (172 Ill. App. 3d at 757), and our statement in *Cook* that an extra degree of scrutiny will be applied to the record when the Commission overturns an arbitrator's decision without receiving any additional evidence. (*Cook*, 176 Ill. App. 3d at 552.) Neither of these decisions establishes any basis for changing the standard of review presently employed by the Commission. Further, the amendment to section 19(e) of the Workers' Compensation Act makes no change in the standard of review but merely sets forth procedural requirements governing matters on review.

Even if we wished to do so, this court may not refashion a rule of review of our own accord, for any such change would be contrary to the holdings in supreme court cases, which are controlling on appellate court cases. Such a change must come either from our supreme court or from our legislature.

The judgment of the circuit court is affirmed.

Affirmed.

McNAMARA and LEWIS, JJ., concur.

JUSTICE McCULLOUGH, specially concurring:

Although the facts and circumstances surrounding the incident giving rise to this claim present serious credibility questions insofar as the claimant is concerned, it is the responsibility and duty of the Commission to determine that credibility and to make its decision. We should reverse as pointed out by the majority only when that decision is against the manifest weight of the evidence.

I write this special concurrence because the majority cites *Cook v. Industrial Comm'n* for the proposition that when the arbitrator's actual findings are rejected by the Commission without new evidence, an extra degree of scrutiny is required to determine if there is sufficient basis for the Commission's decision. As stated in my dissent in *Cook*, I continue to disagree that this should be the law of the State of Illinois. The Industrial Commission has no responsibility to accept additional evidence during its review process except as set forth specifically in the statute, chapter 48, section 19(e). Additional evidence is to be presented to the Commission only when such evidence: "(1)

relates to the condition of the employee since the time of the arbitration hearing, (2) relates to matters that occurred or conditions that developed after the arbitration hearing, or (3) was, for good cause, not introduced at the arbitration hearing." Ill. Rev. Stat. 1985, ch. 48, par. 138.19(e).

If we are to give additional credence to the arbitrator's decision where the statute requires the authority and decision-making process be in the Industrial Commission, we are again attempting to destroy the legislative purpose of the Industrial Commission's responsibility.

Likewise as pointed out in the majority decision, we should not accept the employer's argument that we establish a new rule authorizing the Commission to reverse the decision of the arbitrator if that decision is against the manifest weight of the evidence. This is not provided for in the Workers' Compensation Act, and any decision to the contrary would be in direct contravention of supreme court cases.

Although I disagree with the Commission's decision with respect to this incident, it cannot be said to be against the manifest weight of the evidence.

PRESIDING JUSTICE BARRY, specially concurring:

While I concur with the majority's conclusion that the Commission did not err in overturning the arbitrator's decision, I disagree with the majority's finding that the Commission's power of review has not changed. The majority rests its position on three conclusions: (1) that *Orkin Exterminating Co. v. Industrial Comm'n* (1988), 172 Ill. App. 3d 753, 526 N.E.2d 861, and *Cook v. Industrial Comm'n* (1988), 176 Ill. App. 3d 545, 531 N.E.2d 379, did not establish any basis for changing the standard of review employed by the Commission; (2) that the amendment to section 19(e) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(e)) did not change the standard of review; and (3) that this court's refashioning of the standard of review would amount to an impermissible overturning of supreme court decisions by an appellate court.

Historically, the law in Illinois has been that on review the Industrial Commission could hear any new evidence the parties cared to introduce and that it was not bound by the decisions of its arbitrators. In 1921, the Illinois Supreme Court ruled that the Commission's review of an arbitrator's decision is *sui generis*, being neither a mere review of the written record made before the arbitrator nor a trial *de novo*, but a combination of the two. (*People ex rel. Oelsner v. Andrus* (1921), 299 Ill. 50, 132 N.E. 225.) Subsequently, in *Rodriguez v. Industrial Comm'n* (1939), 371 Ill. 590, 21 N.E.2d 741, the supreme

court held that regardless of whether the Commission hears any testimony in addition to that heard by the arbitrator, it exercises original jurisdiction and is in no way bound by the arbitrator's findings. The supreme court reiterated that holding in *Garbowicz v. Industrial Comm'n* (1940), 373 Ill. 268, 26 N.E.2d 123, and more recently in *Berry v. Industrial Comm'n* (1984), 99 Ill. 2d 401, 459 N.E.2d 963.

Times change. The Commission's 1988 in-house study, "Workers' Compensation Overview 1972-1988," showed that while in 1950 only 2,951 workers' compensation claims were pending, by 1988 over 71,000 claims were pending. The study noted that 55% to 60% of the arbitrators' decisions were appealed to the Commission. It further noted that in 1979, for the first time in its history, the number of cases pending at the Commission had exceeded the number of new cases filed. In a pessimistic discussion of its ability to meet its workload, the Commission stated that the 9- to 18-month delay for oral arguments on review could quickly grow to a 30- to 36-month delay by the end of the fiscal year.

Against this backdrop of an increasing caseload and a lengthening delay between the filing of cases and their final resolution, the legislature amended the Workers' Compensation Act (Pub. Act 83—1125, eff. June 30, 1984). Among other things, Public Act 83—1125 increased the number of Commissioners, provided for an expedited hearing procedure for certain cases, and amended section 19(e) to severely limit the types of evidence which could be introduced on review before the Commission. Prior to June 30, 1984, section 19(e) had provided that on review the Commission could consider any evidence the parties cared to submit. (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(e).) The amended section 19(e) provided in relevant part: "Additional evidence may be adduced where such evidence (1) relates to the condition of the employee since the time of the arbitration hearing, (2) relates to matters that occurred or conditions that developed after the arbitration hearing, or (3) was, for good cause, not introduced at the arbitration hearing." (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(e).) In enacting Public Act 83—1125, Senator Collins stated that the bill "made some great stride[s] in resolving *** the problem that labor had with [the] speedy expedition of claims." (83d Ill. Gen. Assem., Senate Proceedings, June 30, 1984, at 83.) In the House, Representative McPike stressed the fact that the amendment provided for an expedited hearing and increased the number of Commissioners to seven, which would "hopefully provide swift answers to the cases before the Commission." 83d Ill. Gen. Assem., House Proceedings, June 30, 1984, at 150.

The supreme court took notice of this change in *Yellow Cab Co. v. Industrial Comm'n* (1985), 108 Ill. 2d 330, 483 N.E.2d 1278, where it upheld its own decision to create a special Industrial Commission Division of the Appellate Court (113 Ill. 2d R. 22(g)). There, the supreme court stated:

> "[U]nder the existing statutory scheme and the provisions of Rule 302(a) prior to its amendment, claims for compensation were not being adjudicated in the expeditious manner contemplated by the Workers' Compensation Act [citations]. For the most part the delays [were] encountered prior to the cases reaching the circuit courts, but it is anticipated that the amendments to the Workers' Compensation Act effected by Public Act 83—1125 (eff. June 30, 1984) will expedite the decision of cases by the Commission. In view of the number of times the issues are decided prior to reaching that stage, we are of the opinion that any further extension of the litigation beyond the decision of the appellate court is warranted only if at least two members [now one member] of the appellate panel make the statements required under Rule 315(a)." *Yellow Cab*, 108 Ill. 2d at 341, 483 N.E.2d at 1283.

This court thereafter decided *Orkin Exterminating Co.* and *Cook.* It is true that neither case changed the Commission's standard of reviewing arbitrators' decisions to one of manifest weight of the evidence. However, contrary to the majority's assertion, the cases did in fact change the standard by which the Commission is to review its arbitrators' factual findings. When this court stated that an arbitrator's factual findings are not without legal effect and that it would apply an extra degree of scrutiny to cases in which the Commission had overturned an arbitrator's findings without hearing new evidence, the Commission's standard in reviewing arbitrators' findings was resultantly changed, since it then could only overturn its arbitrators' findings when its decision could withstand the extra scrutiny of this court. (I would note that in the *Orkin* and *Cook* cases the supreme court denied the parties' petitions for leave to appeal.)

The legislature, the supreme court, and the Commission itself have taken notice of the caseload now overwhelming the Commission. The legislature has sought to lessen this burden and expedite the appeal process by, among other things, severely limiting the nature of the hearing before the Commission. The supreme court has recognized the legislature's desire to expedite appeals and in *Yellow Cab* partly justified its creation of this court by that need. This court in *Orkin Exterminating Co.* and *Cook* has effectively recognized the reality

that the modern Industrial Commission must rely more and more on the record compiled before the arbitrator and that the Commission has less and less time to devote to an in-depth review of that record.

Accordingly, I find that *Orkin Exterminating Co.* and *Cook* set forth a new standard of review in cases in which the Commission overturns an arbitrator's factual findings without hearing new evidence and that this in turn means that the Commission must accord reasonable weight to the arbitrators' findings. In other words, the Commission must now apply a "due deference" standard of review to its arbitrators' decisions, taking into account that in most cases only the arbitrators actually view the witnesses and hear their testimony. I further find that this change in the law was in effect fully sanctioned by the legislature in Public Act 83—1125 and by the supreme court in *Yellow Cab* and that it therefore does not usurp the supreme court's authority over this court.

In the instant case, however, I find that even under the due deference standard the Commission did not err in overturning the arbitrator's decision. The petitioner presented sufficient evidence to prove that his injury arose out of and in the course of his employment.