FRANK A. MITCHELL, Appellant and Cross-Appellee, v. THE INDUS-
TRIAL COMMISSION *et al.* (Fiat-Allis, Appellee and Cross-Appellant).

Fourth District (Industrial Commission Division)   No. 4—91—0366WC

Opinion filed July 15, 1992.—Rehearing denied September 18, 1992.

Katz, Friedman, Schur & Eagle, of Chicago (Harold A. Katz, of counsel), for appellant.

Karen L. Kendall and Bradley S. McMillan, both of Heyl, Royster, Voelker & Allen, of Peoria, and Gary L. Borah, of Heyl, Royster, Voelker & Allen, of Springfield, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The claimant, Frank Mitchell, appeals an order of the circuit court which reversed an Industrial Commission (Commission) decision that awarded benefits to claimant. The employer cross-appeals, arguing that this court lacks appellate jurisdiction. We hold that under the circumstances we have jurisdiction, and further, we reverse the circuit court.

Claimant notified his employer that he was injured on March 2, 1985. A hearing was held on November 16, 1987, and the parties presented evidence. On December 31, 1987, the arbitrator denied claimant's benefits on the basis that he had failed to prove that he in fact had sustained accidental injuries arising out of the course of his employment on the date alleged. On August 22, 1990, the Commission reversed the decision of the arbitrator, awarded claimant benefits, and additionally the Commission awarded attorney fees and penalties, finding that the employer's termination of benefits to claimant was not justified. On March 1, 1991, the circuit court reversed the Commission's decision, finding it to be against the manifest weight of the evidence.

Claimant, for reasons which will be discussed later in this opinion, did not appeal this decision of the circuit court within 30 days. On April 25, 1991, however, claimant filed a petition pursuant to section 2—1401 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401), requesting that the circuit court withdraw its order of March 1, 1991. The employer objected to this petition. On April 29, 1991, the circuit court entered an order granting claimant's petition, and entered a new order of judgment which was in substance the same as the March 1, 1991, order. On May 20, 1991, claimant then filed his notice of appeal, which was twice amended. On June 4, 1991, the employer filed its cross-appeal.

The pertinent facts are as follows. Claimant had been employed by the employer, Fiat-Allis, Inc., since 1948. He worked in the powerhouse, taking readings and repairing steam lines. In his work, claimant said, he was often required to use ladders. On the night of March 2, 1985, claimant testified that he was using a ladder to change filters, and he fell off the ladder from a height of about four feet while he was working in the west penthouse. Claimant said that he told the employer's guard, William Butterfield, about his accident that night, and that he saw Butterfield "write it down." Claimant had experienced problems with his knees during his employment with the employer other than those arising from the incident of March 2, 1985,

and also had problems with his back during his employment with the employer.

Butterfield testified that, on more than one occasion, claimant had told him about work-related injuries, although he could not recall specifically whether claimant told him about an injury incurred on March 2, 1985. Specifically, Butterfield did recall that at some point claimant fell off something while doing maintenance work, and that it happened in the west penthouse. On this occasion, Butterfield said that he recorded the matter of claimant's fall in his guard report, which he turned in, and which, according to Butterfield should "still be out there" and should have been kept by the company.

Ervin Shores, the employer's supervisor of medical services, testified that he searched the guard records and found no evidence that claimant had reported the March 2, 1985, injury. Shores was first notified of claimant's injury by claimant on March 25, 1985. The employer did not introduce the actual March 2, 1985, guard report into evidence, nor did it call either of the two individuals of the company whose job it was to secure the reports the morning after a shift. Shores interviewed Butterfield, and in the accident report that Shores took on March 25, 1985, Shores stated that claimant slipped from a ladder and "had pain in his right leg and hip." Shores was aware that claimant had experienced previous injuries, but they were not industrial injuries and had been treated under medical. Claimant did not report to the employer's hospital the morning after the injury, although he had in the past sought the services of the hospital when experiencing aches and pains on the job.

Claimant contacted his orthopedic surgeon, Dr. David Mack, who had performed arthroscopic surgery upon claimant's knee in 1983, and due to claimant's previous knee problems, surgery in the future was a possibility. Mack had also treated claimant for his back problems. With respect to the injury of March 2, 1985, Mack saw claimant on March 26, 1985. Claimant reported his work accident to Mack, and Mack wrote plaintiff's report of the March 2, 1985, accident down. Claimant further told Mack that "catching" in his right knee began after the accident. Though Mack could not specify to what degree, he testified that the accident in March of 1985 aggravated the arthritis in claimant's knee, that the condition of the knee was worse after the accident and that the accident caused the catching in claimant's knee, although Mack conceded that catching could have occurred with the absence of trauma to the knee. Claimant did not complain of back problems in March of 1985, and he never claimed to Mack that the March 2, 1985, fall aggravated the condition of his back.

Claimant continued to work after the accident until May 9, 1985, at which point Dr. Mack performed arthroscopic surgery on claimant. During this time, however, he could not climb well, and fellow employees did most of the climbing. Claimant experienced quite a bit of pain during the period leading to the surgery.

Claimant was off work from the date of the arthroscopy until January 14, 1986, when Dr. Mack released him to return to work. During the time between his surgery and his return to work, claimant was prescribed therapy in the form of some light weight lifting to strengthen his knee. This hurt his knee quite a bit, and hurt his back somewhat as well. During this period, claimant had both his knee and back treated for this soreness.

### THE EMPLOYER'S CROSS-APPEAL: APPELLATE JURISDICTION

■■ The first issue we address relates to whether we have jurisdiction to decide claimant's appeal. Illinois Supreme Court Rule 303 (134 Ill. 2d R. 303) establishes the requirements for our jurisdiction. Rule 303(a)(1) provides:

> "[N]otice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending post-trial motion." (134 Ill. 2d R. 303(a)(1).)

However, if the time requirements of Rule 303(a) are not met, appellate jurisdiction may obtain under Rule 303(e), which provides in pertinent part:

> "On motion supported by a showing of reasonable excuse for failure to file a notice of appeal on time, *** filed in the reviewing court within 30 days after the expiration of the time for filing a notice of appeal, the reviewing court may grant leave to appeal ***." 134 Ill. 2d R. 303(e).

*Sub judice*, though, claimant neither appealed the March 1, 1991, order disposing of the controversy at the circuit level, nor did claimant file a motion under Rule 303(e) within 30 days of the expiration of the time for appeal. Rather, within the time allowed for under Rule 303(e), claimant filed a motion pursuant to section 2—1401 of the Code.

The reason for this action is as follows. In his verified section 2—1401 petition, claimant's counsel related that he did not receive a copy of the court's judgment (although a file-stamped copy of the original judgment order indicates that it was sent to counsel) at any

time after March 1, 1991. It was not, according to the verified petition, until April 25, 1991, that counsel learned that the order had been entered. On that day, he searched the court file, and the order was not in the court file (although the order's existence is indicated on the docket sheet entry of March 1, 1991). The verified petition further related that he was informed by the circuit judge of the entry of the order on April 25, 1991. Claimant's counsel asserted at oral argument both that the circuit judge "directed" him to file a section 2—1401 petition, and that the circuit judge "suggested" that he file such a petition. While the verified petition is silent as to the circuit judge's direction or suggestion, the docket sheet entry of April 25, 1991, does state: "[Claimant's counsel] directed to file written motion to vacate ***." Neither party on appeal has explained just how the "missing" original order of March 1, 1991, appears in the record, when the order was not in the court file initially.

In *Kalan v. Palast* (1991), 220 Ill. App. 3d 805, 809-10, 581 N.E.2d 175, the court observed:

> "The purpose of section 2—1401 is to enable a party to bring facts to the trial court's attention which, if known by the court at the time it entered the final order or judgment, would have prevented the entry of the judgment or order. [Citation.] Petitioner bears the burden of establishing a right to relief by a preponderance of the evidence. [Citation.] The determination of whether or not to grant the petition lies in the discretion of the trial court and will not be disturbed absent an abuse of that discretion."

■ The employer argues that the circuit court was without jurisdiction to grant the section 2—1401 petition. We disagree. A section 2—1401 petition is not a continuation of the original proceeding but rather the commencement of an entirely new proceeding. (See *Manning v. Meier* (1983), 114 Ill. App. 3d 835, 840, 449 N.E.2d 560.) While it is true that a circuit court generally loses jurisdiction to vacate or modify a final order after 30 days, claimant did not file a simple motion to vacate or modify the original order, but rather, as indicated, commenced a new proceeding via section 2—1401. It necessarily follows that the circuit court had jurisdiction to consider and rule on the motion.

The proper focus, then, is whether the circuit court abused its discretion in granting claimant's motion and affording claimant the relief claimant requested. At oral argument, claimant's counsel acknowledged that the order the circuit court entered on April 29, 1991, was in substance the same order as was originally entered on

March 1, 1991. The sole purpose of the section 2—1401 petition was to allow claimant a new 30-day clock to file a notice of appeal with this court.

A section 2—1401 motion "may not be invoked to review an order from which a party could have appealed within the proper time frame, and it cannot be used as a substitute for the party's right to appeal." (*Ruttenberg v. Red Plastic Co.* (1979), 68 Ill. App. 3d 728, 732, 386 N.E.2d 616.) When all relevant facts appear of record, and "especially where reentry of the same judgment is requested, section [2—1401] relief is not appropriate." (*Town of Normal v. Board of Regents, Regency Universities* (1982), 107 Ill. App. 3d 120, 122, 437 N.E.2d 406.) Here, there is no question that at the time claimant's counsel became apprised of the entry of the March 1, 1991, order, there was ample time to petition this court under Supreme Court Rule 303(e), and the existence of a reasonable excuse for counsel's failure to comply with the requirements of Rule 303(a). The proper arena for adjudication of the question of the preservation of claimant's right to appeal was in the appellate court, pursuant to our supreme court rules. Accordingly, we hold that claimant's section 2—1401 motion was not a proper vehicle to attain the relief claimant sought, and consequently, the circuit court erred in granting both the motion and claimant's requested relief. This fact alone, however, does not require that we dismiss for lack of jurisdiction.

The employer argues that the Illinois Supreme Court's recent decision of *Granite City Lodge No. 272, Loyal Order of the Moose v. City of Granite City* (1990), 141 Ill. 2d 122, 565 N.E.2d 929, requires reversal in this case. There, the court held that a defendant's lack of actual notice that its post-trial motion had been denied did not toll the time for appeal, where the order had been signed by the trial judge and filed with the clerk of the court. In *Granite City*, as in the case *sub judice*, the trial court had taken the matter under advisement, and when the order was entered, it was entered upon the docket sheet. Further, in *Granite City*, the party seeking appellate jurisdiction did not become aware of the order until *after* the 30-day period to file a motion for extension of time provided in Rule 303(e). Nonetheless, the court affirmed the appellate court's holding that appellate jurisdiction was lacking. *Granite City*, 141 Ill. 2d at 127.

The employer also cites, *inter alia, Huber v. Maggio* (1975), 31 Ill. App. 3d 624, 333 N.E.2d 270, in support of reversal. *Huber* is cited in the employer's reply brief for the first time. In *Huber*, the

party did not receive notice of a final judgment through "oversight," and the party filed a simple notice of appeal after the 30-day time frame had passed under Rule 303(a) but during the additional 30 days set forth in Rule 303(e). The appellate court held that the circuit court had no jurisdiction to rule that the party's notice of appeal was effective, and that the appellate court lacked jurisdiction given the party's failure to apply for leave to file a late appeal under Rule 303(e). (*Huber*, 31 Ill. App. 3d at 625.) The circuit court action in *Huber* did not involve a section 2—1401 petition, but rather involved the opposing party's objection, at the circuit level, to the untimely notice of appeal.

■ All of the cases which the employer argues call for reversal lack one key aspect which is present in the case: namely, the circuit judge's direction or suggestion to the party seeking to effect appeal that the party file a given motion at the circuit level. In our view, this distinction is sufficient to take this case out of the ambit of the cases the employer relies upon.[1]

Of particular application to the issue before us are the principles embodied in *Needham v. White Laboratories, Inc.* (7th Cir. 1981), 639 F.2d 394. There, the court held that despite the fact that defendant's appeal was untimely, and appellate jurisdiction therefore not invoked within the rules of appellate procedure, the appellate court had jurisdiction to decide the appeal. In *Needham*, the trial court had erroneously assured defendant's counsel that a particular post-trial motion tolled the time for appeal until the motion was disposed of. The court stated: "Defendant White should not be penalized for relying on the district court assurance that notice of appeal filed within thirty days of its disposition of the motion to reconsider would be timely." *Needham*, 639 F.2d at 398.

■ In the case before us, the circuit judge made a good-faith attempt to correct what she envisioned as a clerical error. Claimant's counsel's assertion that the circuit court directed him to file a section 2—1401 motion in order to enable him to appeal is uncontradicted. As indicated, this was not proper advice. However, like the court in

---

[1] We have taken with this case the employer's motion to strike claimant's reply brief due to claimant's failure to comply with Supreme Court Rule 344 (134 Ill. 2d R. 344) regarding the form of briefs. While we agree that by all indications claimant has failed to comply with the type-size requirements of Rule 344, given that we decide the pivotal issues of this case either on authority not provided by either party or upon the briefing contained in both parties' initial briefs, the motion, though appearing to be well taken, is moot.

*Needham*, we do not feel that claimant should be penalized for relying upon the directive of the circuit court. Accordingly, we hold that we have jurisdiction to decide the instant appeal.[2]

## CLAIMANT'S APPEAL

Claimant raises a number of issues on appeal: namely, whether the circuit court erred in reversing the decision of the Commission on the issues of work-related injury, amount of disability and the award of fees and penalties.

It is well settled that we may reverse the Commission's decision only when it is against the manifest weight of the evidence. (See *Adams Truck Lines v. Industrial Comm'n* (1990), 193 Ill. App. 3d 814, 550 N.E.2d 1148.) For the following reasons, we do not believe this to be true in the case *sub judice*, as in this case the Commission's decision was within the manifest weight of the evidence.

■ While claimant's accident at the workplace was unwitnessed, the Commission found claimant's testimony "credible and unrebutted." The Commission is the judge of the credibility of the witnesses. (*Adams*, 193 Ill. App. 3d at 819, citing *Caterpillar Tractor Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 35, 43, 454 N.E.2d 252, 256.) A review of the record supports the Commission's determination. Contrary to the position of the arbitrator and the employer on appeal, we find that the testimony of the security guard, Butterfield, and the absence of a report of claimant's accident *support*, rather than cast doubt upon, the issue of whether the accident took place at the workplace. Butterfield testified that he recalled that claimant had fallen off something while doing maintenance work in the west penthouse, which mirrors claimant's testimony about the accident. We find the fact that Butterfield could not remember the exact date of the accident to be of little import. Moreover, Butterfield clearly testified that he filled out a guard report for the accident, and stated that the report should have remained in the employer's possession. Shores testified that there was no report. Again, it was the Commission's func-

---

[2]For the same reasons, we deny the employer's motion to strike claimant's second amended notice of appeal. The basis of this motion is that claimant failed to appeal the March 1, 1991, order within 30 days of learning of that order. (See 134 Ill. 2d R. 303(c)(4).) However, claimant effectively appealed the April 29, 1991, order within the requirements of Rule 303, and the employer has cross-appealed the granting of claimant's section 2—1401 motion and the entry of the relief claimant requested. The orders were, as we have indicated, substantively the same, and we have held that claimant should not be penalized for following the directives of the trial court.

tion to judge the credibility of Butterfield and Shores, and Butterfield's, as well as claimant's, testimony contradicts that favoring the employer on the issue of the accident. Finally, we note that the arbitrator's finding that claimant continued to perform his "normal duties" for a time after the accident is contradicted by claimant's unrebutted testimony that he was restricted in his ability to climb—a function that his co-workers did a majority of after the accident.

■ As to the issue of temporary total disability, we note that the employer offered no contrary medical opinion, and therefore Dr. Mack's testimony is unrebutted. While the employer notes that Mack at one point in his deposition seemed to indicate that he could not say to what extent claimant's condition was worse due to the accident, he also testified that the accident in March of 1985 aggravated the arthritis in claimant's knee, that the condition of the knee was worse after the accident and that the accident caused the catching in plaintiff's knee. Given the absence of any contrary medical opinion, we find that the testimony of Dr. Mack was sufficient to support an award of temporary total disability. As stated in *Berry v. Industrial Comm'n* (1984), 99 Ill. 2d 401, 407, 459 N.E.2d 963, quoting *Long v. Industrial Comm'n* (1979), 76 Ill. 2d 561, 565-66, 394 N.E.2d 1192:

> " 'Cases involving aggravation of a preexisting condition concern primarily medical questions and not legal ones. Therefore, a finding of fact by the Commission on this issue, based on any medical testimony or on inferences to be drawn from medical testimony, should be given substantial deference because of the expertise acquired by the Commission in this area.' "

■ Finally, we consider the question of attorney fees and penalties. The Commission determined that the employer's termination of benefits to claimant was not justified. As indicated, claimant was off work from the date of the arthroscopy until January 14, 1986, when Dr. Mack released him to return to work. During the time between his surgery and his return to work, claimant was prescribed therapy in the form of some light weight lifting to strengthen his knee. This hurt his knee quite a bit, and hurt his back somewhat as well. During this period, claimant had both his knee and back treated for this soreness.

Claimant petitioned for fees and penalties under section 19(l) of the Illinois Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.19(l)). Where a delay occurs in the payment of benefits, the employer bears the burden of justifying the delay. (*Board of Education v. Industrial Comm'n* (1982), 93 Ill. 2d 1, 9, 442 N.E.2d 861.) The employer cites *O'Neal Brothers Construction Co. v. Industrial*

*Comm'n* (1982), 93 Ill. 2d 30, 442 N.E.2d 895, in support of its position that it could justifiably have delayed benefits to claimant in this case. *O'Neal*, like the present case, involved a degenerative arthritic condition; that, however, is where the similarity appears to end. While in *O'Neal* the court reversed an award of fees and penalties under section 19(l) of the Act, it relied heavily on the fact that the employer acted upon responsible medical opinion, which contradicted that favoring the claimant's position. (*O'Neal*, 93 Ill. 2d at 41.) Here, the employer points to no medical opinion to justify its withholding of benefits from claimant. We note also that the employer does not contest claimant's assertion that the employer failed to provide claimant with written notice of its withholding of benefits (in violation of Industrial Commission Rule 7110.70 (50 Ill. Adm. Code §7110.70 (1991)), and that during the period before claimant returned to work, but after the employer began to withhold benefits, Dr. Mack wrote to the employer informing it that claimant was still being treated for his injured knee and was still totally disabled. For the foregoing reasons, we hold that the Commission's award of attorney fees and penalties was not against the manifest weight of the evidence.

Accordingly, the order of the circuit court of Sangamon County is reversed.

Reversed.

WOODWARD and STOUDER, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, dissenting:

I respectfully dissent in this matter. The circuit court did not have jurisdiction to entertain the motion filed by the claimant on April 25, 1991.

On February 27, 1991, the circuit court reversed the Commission's decision. This order was shown filed on March 1, 1991. On April 25, 1991, the claimant filed a purported section 2—1401 motion, and on April 29, 1991, the employer objected to the petition. On that date, April 29, 1991, the circuit court granted the claimant's petition to withdraw the purported order on review and at the same time reentered the order of February 27, 1991, verbatim. The claimant filed his notice of appeal on May 20, 1991.

It is clear the grounds set forth in the claimant's motion of April 25, 1991, do not fall within the parameters of a section 2—1401 motion. I agree with the majority's citations to *Kalan* and *Manning*. As stated in *Kalan*, the claimant had the responsibility to bring facts to

the trial court's attention which, if known by the trial court at the time it entered the judgment, would have prevented the entry of that judgment. Also, as the majority states, a section 2—1401 motion is not a continuation of the original proceeding but rather the commencement of an entirely new proceeding.

*Ruttenberg* states the section 2—1401 motion may not be invoked to review an order from which the party could have appealed within the proper time frame and cannot be used as a substitute for the parties' right to appeal. Claimant's counsel's assertions at oral argument as to the circuit court's observations or directions are not properly before this court and should not be considered. Claimant's petition to withdraw, filed April 25, 1991, does not set forth any facts which, if they had been known at the time the court entered its judgment, would have prevented the court from doing so. The respondent filed a special and limited appearance objecting to the April 25, 1991, petition.

The respondent is correct where it states in its special and limited appearance that "the petition does not seek to modify the February 27, 1991, order in any way. The petition alleges no impropriety in the order, nor any allegation of a meritorious claim which would necessitate modification of the order. The petition seeks only to have the order withdrawn or vacated because the 30-day period for appeal of the order has expired. Section 2—1401 does not afford such relief."

The circuit court lost jurisdiction as to the February 27, 1991, order which was filed March 1, 1991, at the very latest on April 1, 1991. On April 25, 1991, the claimant could have filed a motion, pursuant to Supreme Court Rule 303(e), in the reviewing court requesting he be granted leave to file a late notice of appeal. (134 Ill. 2d R. 303(e).) This would not have been an undue burden on claimant and was the proper method to seek review of the circuit court's order. It appears the only purpose of claimant's purported section 2—1401 motion was to obtain a new 30-day period in which to perfect an appeal.

Following *Granite City*, the circuit court did not have jurisdiction to enter the order of April 29, 1991, and likewise this court does not have jurisdiction for review purposes.

I also disagree that *Needham* is authority for this court to find the circuit court had jurisdiction to entertain the motion filed by the claimant. In *Needham*, the defendant did not file its notice of appeal within the 30-day appeal time period. Defendant did, however, file a motion within that 30-day period, the district court assured defendant the motion tolled the appeal period and the plaintiff informed the district court that the motion was timely. Here, there are two important

differences from *Needham*. In the cause before us, the claimant filed no motion before the circuit court within 30 days of the judgment. Additionally, when the motion was filed, the respondent filed a pleading asserting the motion was not timely.

The respondent's position is well taken. The circuit court did not have jurisdiction to enter the order of April 29, 1991.

H. LEWIS, J., joins in this dissent.